**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| HERALD MEDIA HOLDINGS, INC., *et al.* | Case No. 17-12881 (LSS) |
| Debtors[1] | Jointly Administered |
| | Ref. Docket No. 13<br>Hearing Date: January 4, 2018 at 2:00 p.m. (ET) |

**OBJECTION OF REVOLUTION MEDIA GROUP LLC TO DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE FOR: (I) AN ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (B) APPROVING AND AUTHORIZING THE BID PROTECTIONS, (C) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE, (D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING THE DEBTORS' PERFORMANCE UNDER THE ASSET PURCHASE AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (D) GRANTING RELATED RELIEF**

Revolution Media Group LLC ("**RMG**"), by and through its undersigned counsel, hereby submits this objection (the "**Objection**") to the motion of the above captioned debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of order, among other things: (a) approving and authorizing certain bidding procedures (the "**Bidding Procedures**") in connection with the proposed sale of substantially all of the Debtors' assets pursuant to that certain asset purchase agreement (the "**Gatehouse APA**") by and among the Debtors and Gatehouse Media Massachusetts I, Inc. ("**Gatehouse**"); (b) authorizing the Debtors to pay

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Herald Media Holdings, Inc. (5048); Herald Media, Inc. (1468); Boston Herald, Inc. (5341) and Herald Interactive, Inc. (2359). The Debtors' headquarters are located at 70 Fargo Street, Suite 600, Boston, MA 02210.

Gatehouse a break-up fee of $200,000 (the "**Break-Up Fee**") and reimbursement of reasonable and necessary due diligence expenses up to $100,000 (the "**Expense Reimbursement**," and, together with the Break-Up Fee, the "**Bid Protections**"), when and if payable, in accordance with the terms of the Gatehouse APA; and (c) granting other related relief [Docket No. 13] (the "**Bid Procedures Motion**").[2]  In support of the Objection, RMG respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. RMG has submitted to the Debtors a binding, non-contingent bid for the purchase of substantially all of the Debtors' assets on the terms set forth in that certain asset purchase agreement attached hereto as Exhibit A (the "**RMG APA**")[4] and has deposited into escrow with the Debtors $500,000, representing the Purchase Price Deposit.  Simply put, because the RMG APA represents a higher and better offer than the Gatehouse APA, the Court should deny the Debtors' request to approve Gatehouse as the stalking horse purchaser and related Bid Protections and designate RMG as the stalking horse purchaser.

2. Third Circuit precedent establishes that bid protections should be denied where, as here, a willing and able buyer presents a higher and better offer to purchase assets prior to the approval of such bid protections.  RMG's offer demonstrates that the proposed Bid Protections offered to Gatehouse are unnecessary to obtaining an offer higher and better than Gatehouse's and, if such Bid Protections are approved, would only serve to place a large administrative claim burden on the Debtors' estates.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Motion or the RMG APA, as applicable.

[3] Capitalized terms used in this Preliminary Statement shall have the meanings given to them throughout the Objection.

[4] A blackline of the RMG APA against the Gatehouse APA is attached hereto as Exhibit B.

3. In addition to denying the Bid Protections, the Court should designate RMG as the stalking horse purchaser for the Debtors' assets because RMG is not requiring a break-up fee and is only seeking an expense reimbursement capped at $100,000. Designating the RMG APA as the stalking horse bid has at least three (3) primary benefits for the Debtors' estates and creditors: (i) increasing the total consideration for the Debtors' assets by at least $500,000 over the Gatehouse bid, not accounting for the increase of the PTO assumption liability floor by $250,000; (ii) reducing the potential administrative burdens on the Debtors' estates through the elimination of the $200,000 Break-Up Fee; and (iii) lowering of the initial overbid threshold by $200,000.

## BACKGROUND

### A. The Debtors' Marketing Process and the Gatehouse APA

4. As set forth in the Bid Procedures Motion, after significant efforts to turnaround their business proved unsuccessful, the Debtors determined that a sale of substantially all of their assets pursuant to section 363 of the Bankruptcy Code was the best course towards, among other things, maximizing potential returns to their creditors and ensuring the ongoing viability of their news and information products.

5. The Debtors engaged the firm of Dirks, Van Essen & Murray ("**Dirks Van Essen**") to market their businesses for sale. According to the Bid Procedures Motion, Dirks Van Essen assisted the Debtors with preparation of a confidential information memorandum and other marketing materials and contacted 15 parties that it had identified as potentially interested in purchasing the Debtors' business. Also according to the Bid Procedures Motion, nine (9) of those parties signed an NDA and conducted some level of diligence, however, only one (1) party, Gatehouse, ultimately submitted an offer to purchase the Debtors' business.

6. Notably, although RMG had conducted extensive due diligence and submitted letter of intent to purchase the Debtors' assets in September 2013, the Debtors and Dirks Van Essen did not contact RMG in connection with the Debtors' pre-petition marketing efforts, which culminated in the Debtors' entry into the Gatehouse APA.

7. The Gatehouse APA contemplates a going-concern sale of the Debtors' business for a value of roughly $5,000,000, which includes a $4,500,000 cash component and the assumption of certain liabilities, including not less than $500,000 of employee paid time off and certain cure amounts defined in the Gatehouse APA.

B. **The Enhancements Offered by the RMG APA**

8. The basic terms and conditions of the RMG APA are substantially similar to those contained in the Gatehouse APA, but certain of the RMG APA's terms are significantly more favorable to the Debtors, their estates, and their employees. The primary enhancements and distinctions of the RMG APA are as follows:

| **Consideration** | • $3,000,000 cash payment, plus $2,000,000 of Severance Liabilities, and not less than $750,000 of PTO assumed liabilities, less the amount of the Subscription Liabilities as of the Closing Date. |
|---|---|
| **Break-Up Fee** | • Elimination of the Break-Up Fee, resulting in $200,000 reduction in potential administrative liability of the Debtors' estates. |
| **Enhanced Employee-Related Consideration** | • Increase in PTO assumption floor to $750,000, a $250,000 increase over the Gatehouse APA.<br><br>• Assumption of Severance Liabilities up to $2,000,000.<br><br>• Grant of 10% of Buyer's common stock to employees, in accordance with the terms and conditions set forth in Schedule 3.1.5 of the RMG APA. |
| **Removal of Closing Contingency** | • Removes the "Material Adverse Effect" closing contingency provided for in Gatehouse APA. |

**OBJECTION**

9. RMG's offer to acquire the Debtors' assets through the RMG APA is on substantially higher and better terms than those offered by Gatehouse and at significantly less cost to the Debtors and their estates. Approval of the Bid Procedures Motion in its current form would deprive the Debtors' estates of value and create unnecessary administrative expenses. Accordingly, the relief requested in the Bid Procedures Motion should be denied and modified as follows:

   a. The Bid Protections offered to Gatehouse should be denied;

   b. RMG should be designated as stalking horse purchaser; and

   c. RMG should be provided an expense reimbursement for actual costs incurred of up to $100,000, if it is not the successful bidder; and

   d. Certain provisions of the Debtors' proposed bid procedures order annexed to the Bid Procedures Motion (the "<u>Bid Procedures Order</u>") and the Debtors' proposed bid procedures (the "<u>Bid Procedures</u>," a copy of which were annexed to the Bid Procedures Order) should be modified as set forth on <u>Exhibit C</u> attached hereto.[5]

**ARGUMENT**

**A.   <u>Gatehouse's Bid Protections Are Not Actual or Necessary Expenses and Should Be Denied</u>**

10. The allowance of break-up fees is determined on the same basis as other post-petition expenses under section 503(b) of the Bankruptcy Code in that the requesting party must demonstrate that the fees are actually necessary to preserve the value of the estate. <u>In re Reliant Energy Channelview LP</u>, 594 F.3d 200, 208-09 (3d Cir. 2010) (affirming denial of break-up fee where third party asserted that it was prepared to make a higher and better offer prior to entry of the bid procedures order); <u>Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien</u>

---

[5] <u>Exhibit C</u> to this Objection is a redline showing changes to the Bid Procedures and Bid Procedures Order in accordance with the RMG APA and the relief requested in this Objection.

5

Env't Energy, Inc.), 181 F.3d. 527, 535-37 (3d Cir. 1999) ("such a benefit could be found if assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited"). The "business judgment rule should not be applied." Id. at 535.

11.    A break-up fee is only allowed provided that it "does not give an advantage to a favored purchaser over other bidders by increasing the cost of acquisition." Reliant, 594 F.3d at 206.  Here, the Bid Protections (if approved) will only serve as a non-cash enhancement to any bid made by Gatehouse because the Debtors would implicitly reduce any competing bid by the $200,000 that they would need to pay to Gatehouse in the event that Gatehouse is not the successful purchaser.  RMG has made an offer that, among other things, exceeds the total value of the Gatehouse offer and is not conditioned upon the approval of a break-up fee.  Approving the Break-Up Fee would thus dilute the benefit of RMG's superior offer and would increase RMG's (or any other buyer's) cost of acquisition with no resulting benefit to the Debtors' estates.

12.    Moreover, the Break-Up Fee is not necessary to promote competitive bidding based on the facts and circumstances of these chapter 11 cases -- the standard set forth in O'Brien.  See O'Brien, 181 F.3d at 537.  As evidenced by the RMG APA, competitive bidding is already occurring.  Further, the Break-Up Fee contained in the Gatehouse APA is not necessary to establish a minimum or floor for bidding, see id., because RMG's bid (without a break-up fee) sets a higher floor for bidding.  Moreover, had RMG been contacted by the Debtors or Dirks Van Essen during the above-described pre-petition marketing process, RMG would have made its current proposal (which is the highest and best offer to date) much earlier, and the parties likely would not have entered into the Gatehouse APA.

6

13. Although break-up fees may be appropriate in cases in which a stalking horse bidder serves as a catalyst for higher and better bids, Gatehouse's "stalking horse bid" and the Break-Up Fee that it contemplates are unnecessary to preserve the value of the Debtors' estates because RMG, which was not contacted in connection with the Debtors' pre-petition marketing efforts, has already submitted a higher and better bid without any break-up fee. See, e.g. In re Phila. Newspapers, LLC, No. 09-11204SR, 2009 Bankr. LEXIS 3167, at *11-13 (Bankr. E.D. Pa. Oct. 8, 2009) (rev'd on other grounds); In re Beth Isr. Hosp. Ass'n, No. 06-16186(NKW), 2007 Bankr. LEXIS 2386, at *11-15 (Bankr. D. N.J. July 12, 2007). While RMG appreciates the Debtors' desire to have a "bird-in-hand," the Debtors have already achieved that result with RMG's binding offer and, thus, approving the Bid Procedures Order in its current form would serve only to place the proverbial "bird" – up to $300,000 of guaranteed Bid Protections - into the hand of Gatehouse.

### B.  RMG Should Be Designated the Stalking Horse Bidder

#### i.  RMG's Offer Maximizes Value to the Estate

14. A debtor has a fiduciary obligation to maximize the value of its estate for all stakeholders. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985) (bankruptcy trustee "has the duty to maximize the value of the estate"); cf. Revlon Inc. v. MacAndrews & Forbes Holdings, Inc., 506 A.2d 173, 182 (Del. 1986) (duty of the board in a sale of the company is to obtain the best price for the shareholders). Accordingly, when seeking approval of a sale outside the ordinary course of business, a debtor is required to demonstrate that it obtained the highest and best price for the assets to be sold, regardless of whether the sale is to be conducted privately or through an open auction process. See, e.g., In re Integrated Res., Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) (holding that, for the bankruptcy court to

approve a proposed sale of assets, a debtor must generally prove that the "proffered purchase price is the highest and best offer").

15. As demonstrated above, RMG has submitted a higher and better bid than the Gatehouse bid. Pursuing approval of the Gatehouse APA in light of RMG's offer would not maximize the value of the Debtors' assets because it sets a lower bidding floor and thus would be contrary to the Debtors' fiduciary duties. Accordingly, the Court should designate RMG as the stalking horse bidder and deny the Debtors' request to appoint Gatehouse as stalking horse bidder and the related proposed Bid Protections.

### ii. An Expense Reimbursement is Appropriate for RMG

16. If the Court appoints RMG as the stalking horse purchaser, RMG respectfully requests that the Court also award RMG the same expense reimbursement requested by Gatehouse. RMG is confident that it will ultimately be the successful bidder for the Debtors' assets, and that RMG, as stalking horse purchaser, will undertake significant efforts in contemplation of a closing of such sale. RMG has already incurred fees and proceeded very quickly only having learned of the sale process when the chapter 11 cases were filed on December 8, 2017. RMG believes its efforts will provide actual and necessary benefits to the Debtors and their estates, and RMG's costs for pursuing those activities should be entitled to administrative expense status under section 503(b) of the Bankruptcy Code. Indeed, should RMG succeed by this Objection in displacing Gatehouse as stalking horse bidder the Debtors will realize an immediate $200,000 benefit. In the Bid Procedures Motion, the Debtors concede that it is appropriate to grant a stalking horse purchaser an expense reimbursement, and RMG agrees with the Debtors with one caveat: the expenses being reimbursed should be the actual and necessary expenses incurred in pursuing the transaction that results in actual and maximum value to the estate.

17.     Accordingly, should the Court designate RMG as the stalking horse purchaser for the Debtors' assets, RMG should also be awarded the requested expense reimbursement for actual costs incurred up to $100,000.

### C.     Modifications to the Bid Procedures Order and Bid Procedures

18.     While RMG is presenting an offer to purchase the Debtors' assets on substantially the same terms as Gatehouse (other than the higher and better economic terms), RMG objects to certain provisions in the proposed Bid Procedures Order and Bid Procedures and requests modification of such terms consistent with the relief requested in this Objection and the terms of the RMG APA.  For instance, in the event that RMG is selected as stalking horse bidder, any provision of the Bid Procedures Order or Bid Procedures that refer to or intend to protect the interest of Gatehouse as a stalking horse bidder, should be modified to acknowledge RMG as stalking horse bidder, and any references to the bid protections proposed for Gatehouse should be deleted.[6]

### RESERVATION OF RIGHTS

19.     RMG reserves the right to supplement this Objection at any time prior to the hearing on the Bid Procedures Motion.

### CONCLUSION

20.     The Debtors have demonstrated that it is necessary that they promptly sell their assets, and, as is customary in chapter 11, the Debtors intend to do this through a structured auction process supported by a stalking horse bidder.  By this Objection, RMG has presented the Debtors and the Court with a bid to serve as stalking horse bidder that is economically superior to the Gatehouse bid and eliminates the Break-Up Fee (a $200,000 administrative liability) that

---

[6] RMG's proposed revisions are reflected in the redline Bid Procedures Order attached hereto as Exhibit C.

the Gatehouse bid is conditioned upon.  In order to maximize the value of the Debtors' assets, the Court should (i) deny approval of Gatehouse and the Gatehouse APA as the stalking horse bidder and bid, respectively, (ii) deny the Break-Up Fee, (iii) designate RMG as the stalking horse bidder and award RMG an expense reimbursement of up to $100,000, if it is not the successful purchaser, and (iv) modify the Bid Procedures and the Bid Procedures Order to the extent set forth herein and on <u>Exhibit C</u> attached hereto.  Any contrary result would be against the best interests of the Debtors' estates and creditors.

WHEREFORE, RMG requests that the Court deny the Bid Procedures Motion except as set forth herein.

| | |
|---|---|
| Dated: January 2, 2018<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT &  TAYLOR, LLP<br><br>/s/       Matthew B. Lunn<br>Robert S. Brady (No. 2847)<br>Matthew B. Lunn (No. 4119)<br>Vincent C. Thomas (No. 4768)<br>Shane M. Reil (No. 6195)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1256<br><br>*Counsel to RMG* |