# **EXHIBIT C**

**Redline Bid Procedures Order and Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: | Chapter 11 |
| HERALD MEDIA HOLDINGS, INC., *et al.*, | Case No.  17-12881 (LSS) |
| Debtors.[1] | Joint ~~Administration Requested~~Administered |
| | **RE D.I.   Ref Docket No. 13** |

**ORDER GRANTING MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION
PURSUANT TO SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE FOR
AN ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL THE ASSETS, (B)
APPROVING AND AUTHORIZING THE BID PROTECTIONS; (C) SCHEDULING
THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF THE
SALE; (D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND
(F) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion")[2] of the

above-captioned debtors and debtors in possession (each a "Debtor", and collectively, the

"Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy

Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the

Bankruptcy Court for the District of Delaware (the "Local Rules") (i)(a) approving and

authorizing certain bidding procedures in connection with the sale (the "Sale") of substantially

all of the Debtors' assets (as attached hereto as **Exhibit 1**, the "Bidding Procedures"); (b)

---

[1]   The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are
as follows: Herald Media Holdings, Inc. (5048); Herald Media, Inc. (1468); Boston Herald, Inc. (5341) and Herald
Interactive, Inc. (2359).  The Debtors' headquarters are located at 70 Fargo Street, Suite 600, Boston, MA 02210.
[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or
Asset Purchase Agreement, as appropriate.

approving and authorizing the ~~Break-Up Fee and~~ Expense Reimbursement (~~collectively,~~ the "Bid Protections"); (c) scheduling the related auction and hearing to consider approval of sale; (d) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; (e) approving the form and manner of notice thereof; and (f) granting related relief (collectively, the "Bidding Procedures Relief"); and (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided by the Stalking Horse APA (as defined below); (b) approving the assumption and assignment of certain of the Debtors' executory contracts (each, an "Executory Contract") and unexpired leases (each, an "Unexpired Lease") related thereto (any such Executory Contract or Unexpired Lease designated by the Purchaser to be assumed and assigned pursuant to the Sale (as defined below) an "Assumed Contract," and collectively, the "Assumed Contracts"); and (c) granting related relief; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances and complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

AND IT IS FURTHER FOUND AND DETERMINED THAT:

A.    The Debtors have demonstrated good and sufficient reasons for, and the best interests of their estates, creditors, and other parties in interest will be served by, this Court granting, to the extent provided herein, the relief requested in the Motion relating to the bidding process, including approval of (1) the Bidding Procedures, (2) the Bid Protections provided for in the asset purchase agreement, by and between the Debtors and ~~Gatehouse~~Revolution Media ~~Massachusetts I, Inc.~~Group LLC (the "Stalking Horse Bidder"), dated as of ~~December 7, 2017~~January [ ], 2018 (including all exhibits, schedules and ancillary agreements related thereto, and as may be amended, supplemented or modified pursuant to its terms, the "Stalking Horse APA"), which contemplates the Sale of the Purchased Assets to the Stalking Horse Bidder, (3) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Contracts so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Assumed Contracts that may be assumed and assigned to the Stalking Horse Bidder, and (4) the forms of the Sale Notice and Cure Notice substantially in the forms attached to the Motion as **Exhibit D** and **Exhibit E**, respectively.

B.    The Stalking Horse APA and its terms were negotiated by the Debtors and the Stalking Horse Bidder in good faith and at arms-length.

C.    The Debtors have demonstrated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider granting the other relief requested in the Motion, including approval of the Sale and the transfer of the Purchased Assets to the Successful Bidder (as defined in the Bidding Procedures) free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

D.       The Bid Protections as set forth in Section 9.4.1 of the Stalking Horse APA required to be paid under the circumstances described therein to the Stalking Horse Bidder are: (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (3) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, the condition of the Purchased Assets, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (4) a condition to and necessary to induce the Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Stalking Horse APA.

E.       Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse APA (including the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures).  The Bid Protections induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Purchased Assets on which the Debtors, their creditors and other bidders can rely, and which encourages and facilitates the Auction process.  The Stalking Horse Bidder has thus provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized.  Accordingly, the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

F.       The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

G.      The process for submitting Qualified Bids is fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and parties in interest.

H.      The Sale Notice and Cure Notice (each as defined below) are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Sale, the Sale Hearing, and any and all objection deadlines related thereto, including with respect to cure amounts and the assumption and assignment of Executory Contracts and Unexpired Leases, and no other or further notice is required of the foregoing.

I.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

J.      The entry of this Order (the "Sale Procedures Order") is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

IT IS HEREBY ORDERED THAT:

1.      The Bidding Procedures Relief is GRANTED as set forth herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled on the merits.

3.      The Bidding Procedures attached hereto as **Exhibit 1** are APPROVED and shall govern all bids and bid proceedings relating to the sale of the Purchased Assets.

4.      The Debtors may proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures (subject to the terms thereof) in accordance with the following timeline:

| Proposed Sale Timeline | |
|---|---|
| Deadline to Serve Sale Notice and Cure Notice | January 10, 2018 <br><br> (two (2) Business Days after entry of the Sale Procedures Order)[3] |
| Cure Objection Deadline and Assignment Objection Deadline | January 22, 2018 <br><br> (ten (10) days after service of Cure Notice) |
| Sale Objection Deadline | February 2, 2018 <br><br> (twenty-five (25) Business Days after entry of Sale Procedures Order) |
| Bid Deadline | February 6, 2018, 5:00 p. m.  (prevailing Eastern time) <br><br> (two (2) Business Days prior to the Auction) |
| Deadline to Notify Qualified Bidders | February 7, 2018 <br><br> (twenty-four (24) hours prior to Auction) |
| Auction | February 8, 2018 <br><br> (within thirty to forty (30 to 40) days after entry of Sale Procedures Order) |
| Notice of Successful Bidder | February 9, 2018 |

---

[3]     As used herein, "Business Day" means any day other than Saturday, Sunday, or other day on which commercial banks in the City of Boston are authorized or required by law to remain closed.

| | |
|---|---|
| | (one (1) Business Days after Auction) |
| Sale Reply Deadline | February 10, 2018 |
| | (two (2) days prior to Sale Hearing) |
| Sale Hearing | February 12, 2018 |
| | (no later than six (6) Business Days after Bid Deadline) |
| Sale Closing | On or before March 28, 2018 |

5.      The Bid Protections are APPROVED and the Debtors are required, subject to paragraph 6 below, to pay the Bid Protections when and as set forth in the Stalking Horse APA as administrative claims of the estate, which Bid Protections shall survive termination of the Stalking Horse APA and shall be binding and enforceable against each Debtor and its respective estates, any trustee, examiner or other representative of the Debtors' estates.  The Debtors shall comply with the Bidding Procedures and Bid Protections approved hereby and as set forth in the Stalking Horse APA and, until the termination thereof, such other covenants and obligations set forth therein.  The Bid Protections will constitute, pursuant to section 503 of the Bankruptcy Code, a superpriority administrative expense claim in each of the Debtors' bankruptcy estates with priority over any and all administrative expense claims other than superpriority claims granted pursuant to any order approving debtor-in-possession financing (a "DIP Financing Order") to the provider of debtor-in-possession financing (the "DIP Lender").  Any Bid Protections payable pursuant to the terms of the Stalking Horse APA shall be payable without any further order of the Bankruptcy Court.

6.      For the avoidance of doubt, if the Stalking Horse Bidder is entitled to the Expense Reimbursement, (i) such Expense Reimbursement shall be limited to reasonable, actual, and documented out-of-pocket fees and expenses not to exceed $100,000.00, and (ii) the Stalking

7

Horse Bidder shall submit an invoice (the "Invoice") to the Debtors, the U.S. Trustee, and, if

applicable, the statutory committee appointed in these cases (the "Committee") evidencing such

fees and expenses, which Invoice may be redacted for privileged information.  If either the

Debtors, the Committee, or the U.S. Trustee (together with the Stalking Horse Bidder, the

"Service Parties") objects for any reason to the payment of all or any portion of the Expense

Reimbursement, such party must file and serve an objection so as to be received by the other

Service Parties no later than ten (10) days after the submission of the Invoice.  If no party objects

to the Expense Reimbursement within such ten-day period, it shall be payable as provided for

pursuant to the terms of the Stalking Horse APA.  Any portion of the Expense Reimbursement

that is the subject of an objection will not be payable unless consensually resolved by the parties

or determined by the Court, and any portion of the Expense Reimbursement that is not subject to

an objection shall be paid ten (10) days after submission of the invoice.

   7. Only holders of allowed valid secured claims are permitted to submit a credit bid

at the Auction.  To that end, unless expressly consented to in writing by the Debtors after

consultation with the Committee in advance of the Bid Deadline, no party shall be permitted or

entitled to credit bid, or attempt to credit bid, any alleged obligation of the Debtors, or any

affiliate or subsidiary of the Debtors, relating to (i) any alleged fees and/or penalties, (ii) alleged

damages, including damages relating to or arising in connection with any prepetition activity of

the Debtors, or (iii) any other claim (as that term is defined in the Bankruptcy Code) that the

Debtors assert constitutes, or will constitute at some point, a contingent, unliquidated or disputed

claim against the Debtors or any subsidiaries or affiliates of the Debtors.  Furthermore, any

credit bid must provide for (w) payment in cash at the closing of the ~~Break-Up Fee and/or~~

Expense Reimbursement to the extent the ~~Break-Up Fee and/or~~ Expense Reimbursement is

required to be paid, (x) payment in cash at closing, and/or the assumption of, unpaid administrative expense claims of the Debtors incurred from the Petition Date through and including the date on which  the closing of the Sale occurs, (y) payment in cash at the closing of the amount required to be paid by the Debtors, if any, on account of cure accounts that the Debtors believe must be paid to cure all defaults under the leases and contracts proposed to be assumed and assigned to the party that submitted the credit bid and (z) payment in cash at closing of all claims that are senior to the claims of the party that submitted the credit bid. Notwithstanding anything to the contrary in this Sale Procedures Order or the Bidding Procedures, the Debtors' rights to contest the propriety of any credit bid pursuant to sections 363(k) and 105 of the Bankruptcy Code are expressly reserved.

8.      The Debtors shall have the exclusive right, in consultation with their advisors and the Committee, to determine whether a bid is a Qualified Bid and shall notify Potential Bidders, and the Service Parties whether any bids have been recognized as such no later than twenty-four (24) hours prior to the Auction; provided, however, that the Stalking Horse Bidder is hereby deemed a Qualified Bidder, and the Stalking Horse APA submitted to the Debtors by the Stalking Horse Bidder and ~~appended to the Motion~~ attached hereto as Exhibit ~~B~~[__], is deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  The Stalking Horse Bidder shall not be required to take any further action in order to participate in the Auction (if any) or, if the Stalking Horse Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing.

9.      Any disputes as to the selection of a Qualified Bid shall be resolved by this Court.

10.     The Debtors are authorized to conduct an Auction if they receive one or more Qualified Bids in addition to the Stalking Horse APA.  The Auction, if necessary, shall be held at

_____ (prevailing Eastern Time) on _____, at the offices of Brown Rudnick LLP, One

Financial Center, Boston, MA 02110, or such other location as shall be timely communicated to

all Qualified Bidders.  If no other Qualifying Bid is received, no Auction shall be necessary.

11.     The Debtors shall arrange for the bidding at the Auction to be transcribed by a

court reporter.  Each Qualified Bidder shall be required to confirm its bid on the record at the

Auction and confirm that it has not engaged in any collusion with respect to the bidding or the

sale.

12.     If the Auction is held, the Debtors shall file with the Court notice of the

Successful Bid(s) and Successful Bidder(s) on or before one (1) Business Day after the Auction.

13.     The Sale Hearing shall be held on _____ at _____ (prevailing Eastern

Time) before this Court, the U. S. Bankruptcy Court for the District of Delaware, 824 North

Market Street, Wilmington, Delaware 19801, __th Floor, Courtroom __.  Any objections to the

Sale must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to

the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy

Court for the District of Delaware and (d) be filed with the Bankruptcy Court and served in

accordance with the rules of the Bankruptcy Court upon: (i) counsel to the Debtors: Brown

Rudnick LLP, One Financial Center, Boston, MA 02110 (Attn: Sunni P. Beville, Esq.

(sbeville@brownrudnick.com)) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N.  Market

Street, 16th Floor, Wilmington, Delaware 19801, Attn: Curtis S. Miller, Esq.

(cmiller@mnat.com)) so as to be received by the Debtors not later than _____ on _____;

(ii) counsel to the Stalking Horse Bidder: ~~Thacker Robinson Zinz, LPA, 2330 One Cleveland Center, 1375 E. 9th St., Cleveland, OH 44114~~<u>Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 N. King St., Wilmington, DE 19801</u> (Attn: ~~Lynn Rowe Larsen, Esq.~~

10

(llarsen@trzlawRobert S. Brady, Esq. (RBrady@ycst.com) and Matt Lunn, Esq.

(MLunn@ycst.com)); and (iii) counsel to the Committee: _____; and (iv) the Office of

the United States Trustee for the District of Delaware.

14.     The following forms of notice are approved: (a) Notice of Sale Procedures,

Auction Date, Objection Deadline, and Sale Hearing, in the form substantially similar to that

attached to the Motion as **Exhibit D** (the "Sale Notice") and (b) the Notice to Counterparties to

Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned

(the "Cure Notice"), in the form substantially similar to that attached to the Motion as **Exhibit E**.

15.     The Debtors shall, on or before _____, serve a copy of the Sale Notice and

this Sale Procedures Order by first class mail, postage prepaid on, as extant: (a) the Office of the

United States Trustee for the District of Delaware; (b) the Office of the United States Attorney

for the District of Delaware; (c) counsel to the Committee: _____; (d) the Internal

Revenue Service; (ed) counsel to the Debtors' prepetition and post-petition lenders; (fe) counsel

to the Stalking Horse Bidder; (gf) all persons known by the Debtors to have expressed an interest

to the Debtors in a transaction with respect to the Assets during the previous six months; (hg) all

entities known by the Debtors that may have a lien, claim, encumbrance, or other interest in the

Assets (for which identifying information and addresses are available to the Debtors); (ih) all

non-Debtor parties to the Executory Contracts and Unexpired Leases; (ji) all of the Debtors'

known creditors; (kj) all Employees and former employees and any others receiving any benefits

under any pension or Employee Benefit Plan; (lk) the Pension Benefit Guaranty Corporation;

(ml) any governmental unit known to the Debtors to have a claim in these cases; (nm) the Office

of the Attorney General in each state in which the Debtors operate; (on) the Office of the

Delaware Secretary of State; and (po) all parties that have requested notice in these cases under Bankruptcy Rule 2002.

16.      The Debtors shall, on or before _____, serve the Cure Notice upon each non-Debtor counterparty to each Executory Contract and Unexpired Lease and their counsel (if known) and the United States Department of Justice, Civil Division, if the non-Debtor counterparty is a department agency or instrumentality of the United States.  The Cure Notice shall state the date, time and place of the Sale Hearing, whether such Executory Contract or Unexpired Lease is designated to be assumed and assigned to the Stalking Horse Bidder, as well as the date by which any objection to the assumption and assignment of such Executory Contract or Unexpired Lease must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Executory Contract or Unexpired Lease in order to cure any defaults that exist under such contract or lease (the "Cure Amounts") pursuant to section 365 of the Bankruptcy Code.  The Cure Notice does not constitute an admission that an Executory Contract or Unexpired Lease is in fact an executory contract or unexpired lease, and the Debtors reserve any and all rights with respect to the Executory Contracts and Unexpired Leases.

17.      If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the Cure Amounts set forth in the Cure Notice, such counterparty must file with the Court a written objection (a "Cure Amount Objection") and serve such Cure Amount Objection so as to be received by the Service Parties by no later than _____ at _____ (prevailing Eastern Time) (the "Cure Objection Deadline").

18.      If, at any time after the entry of this Sale Procedures Order, the Debtors or any Qualified Bidder identify additional executory contracts or unexpired leases to be assumed and

assigned as Assumed Contracts (whether before or after the closing of the sale), as applicable, the Debtors shall serve a supplemental Cure Notice (the "Supplemental Cure Notice") by facsimile, electronic transmission, hand delivery or overnight mail on the applicable non-debtor counterparty and its counsel (if known) and the United States Department of Justice, Civil Division, if the non-Debtor counterparty is a department agency or instrumentality of the United States, no later than ten (10) days before the proposed effective date of the assignment.  Each Supplemental Cure Notice shall (i) state the date, time and place of the Sale Hearing, (ii) state the date by which any objection to the assumption and assignment of such Assumed Contract must be filed and served, and (iii) identify the Cure Amount.

19.    Unless the non-debtor counterparty properly files and serves an objection to the Supplemental Cure Notice (the "Supplemental Cure Amount Objection") on or before ten (10) days after the date the Supplemental Cure Notice (the "Supplemental Cure Objection Deadline"), the Debtors shall be authorized to assume and assign the Executory Contract or Unexpired Lease, subject to the occurrence of the Closing without further notice or order of the Court.

20.    Each Cure Amount Objection and Supplemental Cure Amount Objection must set forth with specificity each and every asserted default in any Executory Contract or Unexpired Lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice or Supplemental Cure Notice, as applicable.

21.    In the event that the Debtors and the non-debtor party cannot resolve the Cure Amount Objection or Supplemental Cure Amount Objection, disputed Cure Amounts ("Disputed Cure Amounts") shall not be paid until the resolution of any such disputes by the Court or mutual agreement of the Debtors, the Successful Bidder and the objecting party.  Cure Amount

Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely file and serve a Cure Amount Objection or Supplemental Cure Amount Objection shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice or Supplemental Cure Notice.  If no timely Cure Objection or Supplemental Cure Amount Objection is filed and served with respect to an Assumed Contract, the Cure Amount identified in the Cure Notice or Supplemental Cure Notice with respect to such Assumed Contract will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Assumed Contract if the Stalking Horse Bidder (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract assumed and assigned to it.  Any party failing to timely file a Cure Amount Objection or Supplemental Cure Amount Objection shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

22.    If an Executory Contract or Unexpired Lease is assumed and assigned pursuant to Court Order, then except for any such Assumed Contract that is subject to Disputed Cure Amounts, the Assumed Contract counterparty shall be paid the Cure Amount, if any, as set forth in the Cure Notice or Supplemental Cure Notice, as applicable, with payment to be made pursuant to the terms of the Successful Bidder's Stalking Horse APA.

23.    If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the assumption and assignment of such Executory Contract or Unexpired Lease with respect to the Stalking Horse Bidder (other than a Cure Amount Objection, an "Assignment Objection"), such counterparty must file and serve such Assignment Objection so as to be

received by the Service Parties by no later than (the "Assignment Objection Deadline"): (i)

_____ (prevailing Eastern Time) on _____; or (ii) the date otherwise specified in

the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed

Contract if such contract is to be assumed and assigned after the Sale Hearing); provided that, if

the Successful Bidder is not the Stalking Horse Bidder the Assignment Objection Deadline shall

be one (1) day prior to the Sale Hearing.  The Court shall make any and all determinations

concerning adequate assurance of future performance under the Assumed Contracts pursuant to

sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

      24.     Except to the extent otherwise provided in the Successful Bidder's asset purchase

agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or

arising after the assumption and assignment of the Assumed Contracts pursuant to section 365(k)

of the Bankruptcy Code.

      25.     Notwithstanding any provision in this Sale Procedures Order, the Stalking Horse

APA or the Bidding Procedures, this Sale Procedures Order does not satisfy, and the Court has

not yet determined if the Debtors have satisfied, the requirements of section 365 of the

Bankruptcy Code for any particular Assumed Contract, including those relating to the cure of

any existing default or providing adequate assurance of future performance.  No Assumed

Contract will be deemed assumed and assigned until the later of (a) the date the Court has

entered an order authorizing the assumption and assignment of a particular Assumed Contract or

(b) the date the Sale is closed.  The Successful Bidder will have no rights in and to any particular

Assumed Contract until such time as the particular Assumed Contract is assumed and assigned to

the Successful Bidder.

26.     Subject to the terms of the Stalking Horse APA and the Bidding Procedures, the Debtors are authorized to take such actions as may be necessary or appropriate to implement and affect the terms and requirements of this Sale Procedures Order, including, but not limited to, expending such funds or taking such action as may be necessary or appropriate to comply with the Bidding Procedures.

27.     To the extent the provisions of this Sale Procedures Order are expressly inconsistent with the provisions of any Exhibit referenced herein, including the Bidding Procedures, or with the Motion, the provisions of this Order shall control.

28.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

29.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

Dated:_____, 2017
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Bidding Procedures**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") for the proposed sale of all or substantially all of the assets and assumption of certain liabilities of Herald Media Holdings, Inc., Herald Media, Inc., Boston Herald, Inc., and Herald Interactive, Inc. (collectively, the "Debtors" or the "Sellers"), in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), lead case number ~~————~~ 17-12881 (LSS).

The Sellers entered into that certain asset purchase agreement, dated ~~December 7, 2017~~ January [ ], 2018, between the Sellers on the one hand and ~~Gatehouse~~ Revolution Media ~~Massachusetts I, Inc.~~ Group LLC  (the "Stalking Horse Bidder"), pursuant to which the Stalking Horse Bidder has agreed to acquire the purchased assets (the "Purchased Assets") and has agreed to assume certain specified liabilities on the terms and conditions specified therein (together with the schedules and related documents thereto, and as may be amended, supplemented or otherwise modified, the "Stalking Horse APA").

The Stalking Horse Bidder has submitted, in the form of the Stalking Horse APA, a Qualified Bid (as defined below) consisting of (a) the assumption of the Assumed Liabilities and (b) a cash payment equal to the sum of (i) $~~4,500,000.00 and (ii~~3,000,000.00, (ii) assumption of Severance Liabilities of up to $2,000,000, and (iii) the Cure Amounts.[1]

The sale transaction pursuant to the Stalking Horse APA is subject to competitive bidding as set forth herein.  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion for the approval of the Bidding Procedures (the "Approval Motion") [Docket No. ~~–~~13].

---

[1]    Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

A.    ASSETS TO BE SOLD

The Sellers seek to complete a sale of the Purchased Assets and the assumption of the

Assumed Liabilities described in Articles 2 and 3 respectively of the Stalking Horse APA.

Except as otherwise provided in the Stalking Horse APA or such other approved purchase

agreement of the Successful Bidder (as defined below), all of the Sellers' right, title and interest

in and to each Purchased Asset to be acquired shall be sold free and clear of all liens, claims,

interests, charges, restrictions and encumbrances of any kind or nature thereon and there against

(collectively, the "Liens"), such Liens to attach solely to the net proceeds of the sale of such

Purchased Assets.

B.    THE BID PROCEDURES

To ensure that the Sellers receive the maximum value for the Purchased Assets, the

Stalking Horse APA is subject to higher or otherwise better offers, and, as such, the Stalking

Horse APA will serve as the "stalking-horse" bid for the Purchased Assets.

1.    Provisions Governing Qualifications of Bidders

In order to participate in the bidding process, prior to the Bid Deadline (defined below),

each person other than the Stalking Horse Bidder who wishes to participate in the bidding

process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined

below):

      a.     a written disclosure of the identity of each entity including
            all affiliates, equity sources or other parties that will be or
            is associated with bidding for the Purchased Assets or
            otherwise participating in connection with such bid and the
            complete terms of any such participation; and

      b.     an executed confidentiality agreement (to be delivered
            prior to the distribution of any confidential information by
            the Sellers to a Potential Bidder) in form and substance
            satisfactory to the Sellers, in substantially the same form as
            signed by the Stalking Horse Bidder and which shall inure

to the benefit of any purchaser of the Purchased Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that the Sellers determine in their reasonable business judgment, after consultation with their advisors and, if applicable, the statutory committee appointed in these cases (the "Committee"), is likely (based on availability of committed capital, experience and other considerations) to submit a bona fide offer and be able to consummate the sale including without limitation obtaining all required regulatory or government agency approvals, will be deemed a "Qualified Bidder." The Sellers will limit access to due diligence to those parties they believe, in the exercise of their reasonable judgment, are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers all of the materials required above (and in any event no later than one (1) business day thereafter), the Sellers will determine, after consultation with the Committee, and will notify the Potential Bidder, the Stalking Horse Bidder and the Notice Parties if such Potential Bidder is a Qualified Bidder.

2.      Due Diligence

Until the day of the Auction, or the Bid Deadline if a Potential Bidder shall not have submitted a Qualified Bid by the Bid Deadline, the Debtors will afford any Potential Bidder that the Debtors determine in their discretion after consultation with the Committee to be reasonable and appropriate under the circumstances. All due diligence requests shall be directed to counsel to the Debtors: Brown Rudnick LLP, One Financial Center, Boston, MA 02110 (Attn: Sunni P. Beville, Esq. (sbeville@brownrudnick.com)). The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

The Sellers will afford any Qualified Bidder with (a) an electronic copy of the Stalking Horse APA, (b) access information for a confidential electronic data room concerning such assets of the Debtors as the Debtors may determine in consultation with the Committee (the "Data Room"), and (c) such due diligence access or additional information as the Sellers, in consultation with their advisors, and the Committee, deem appropriate, in their discretion, subject to contractual obligations to limit access to certain proprietary information; provided, however, the Sellers will, in their reasonable discretion, make reasonable commercial efforts to provide Qualified Bidders with the same information provided to the Stalking Horse Bidder. The Sellers must promptly advise the Stalking Horse Bidder and the Committee in the event any other Qualified Bidder receives diligence the Stalking Horse Bidder has not previously received and shall promptly provide the Stalking Horse Bidder with access to such diligence materials.

The due diligence period shall end on the Bid Deadline, and the Sellers shall not furnish any due diligence information to any Qualified Bidder (other than the Successful Bidder) after the Bid Deadline. For the avoidance of doubt, neither the Sellers nor any of their respective representatives shall be obligated to furnish any due diligence information to any person other than a Qualified Bidder.

3.    Provisions Governing Qualified Bids

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):

a.    it fully discloses the identity of the Qualified Bidder;

b.    it states that the applicable Qualified Bidder offers to purchase the Purchased Assets upon terms and conditions that the Sellers reasonably determine, after consultation with the Committee, are at least as favorable to the Sellers as those set forth in the Stalking Horse APA, and it provides a description of any anticipated regulatory or governmental approvals necessary to consummate the bid;

c.    it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable until the earlier of (a) the closing of the sale to the Successful Bidder, and (b) sixty (60) days after entry of the Sale Order.  Such writing shall guaranty performance of the Qualified Bidder by its parent entities, if any, or provide such other guaranty of performance acceptable to Sellers in their reasonable discretion;

d.    confirmation that all necessary internal and shareholder approvals have been obtained prior to the bid;

e.    it includes a duly authorized and executed copy of an asset purchase agreement, including as applicable the purchase price for the Purchased Assets expressed in U. S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse APA (together with exhibits, schedules, and marked copies, the "Proposed Stalking Horse APA") and the proposed form of sale approval order to approve the sale by the Bankruptcy Court, together with a copy marked to show amendments and modifications to the proposed form of sale approval order attached to the Approval Motion; provided however, that such Proposed Stalking Horse APA shall not include any financing or diligence conditions;

f.    it includes written evidence of sufficient cash on hand to fund the purchase price or sources of immediately available funds that are not conditioned on third party approvals or commitments, that will allow the Sellers to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Proposed Stalking Horse APA; such written evidence shall include the most current audited and the most current unaudited financial statements, or such other financial information as may be acceptable to the Sellers in their reasonable discretion after consultation with the Committee (collectively, the "Financials") of the Qualified Bidder, or, if the Qualified Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Qualified Bidder's equity holder(s) or other financial backer(s) that are guaranteeing the Qualified Bidder's performance;

g.  it provides for a purchase price that exceeds the aggregate consideration to be paid to or for the benefit of the Sellers' estates set forth in the Stalking Horse APA by at least $400,000.00,200,000.00, which represents the sum of (A) the amount of the Break Up Fee (as defined below) of $200,000.00, plus (B) the maximum amount of the Expense Reimbursement (as defined below) of $100,000.00, plus (C) $100,000.00 and otherwise has a value to the Sellers, in the Sellers' exercise of their reasonable business judgment, after consultation with their advisors, that is greater or otherwise better than the value offered under the Stalking Horse APA including impact of the liabilities assumed in the Stalking Horse APA;

h.  it is accompanied by a cash deposit in the amount of 10% of the cash purchase price of the bid (the "Deposit");

i.  it does not entitle the Qualified Bidder to any break-up fee, termination fee or similar type of payment or reimbursement and confirms that, by submitting a bid, the Qualified Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its bid;

j.  it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related cure costs;

k.  it includes an acknowledgement and representation that the Qualified Bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Proposed Stalking Horse APA; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

l.  it includes evidence, in form and substance reasonably satisfactory to the Sellers, of authorization and approval

7

from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposed Stalking Horse APA;

m.    it contains a detailed description of how the Qualified Bidder intends to treat current employees of the Sellers;

n.    it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned;

o.    it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court;

p.    it contains such other information reasonably requested by the Sellers;

q.    it complies with all requirements of the Sale Procedures Order; and

r.    it is received, along with the Deposit, on or prior to the Bid Deadline.

Notwithstanding anything in these Bidding Procedures to the contrary, the Stalking Horse Bidder is deemed to be a Qualified Bidder, the Stalking Horse APA is deemed to constitute a Qualified Bid for all purposes in connection with the Bidding Procedures, the Auction, and the Sale, and the Stalking Horse Bidder shall not be required to take any further action in order to participate in the Auction (if any) or, if the Stalking Horse Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing (as defined below).

The Sellers shall notify the Stalking Horse Bidder, all Qualified Bidders, and the Notice Parties in writing as to whether or not any bids constitute Qualified Bids (and, with respect to each Qualified Bidder that submitted a bid other than the Stalking Horse Bidder, whether such Qualified Bidder's bid constitutes a Qualified Bid) promptly after, and in any event on the same day as, the notification to any Qualified Bidder that their bid constitutes a Qualified Bid;

provided, however, that such notification shall not be given later than twenty-four (24) hours prior to the Auction.

    4.      Bid Deadline

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) counsel to the Sellers: Brown Rudnick LLP, One Financial Center, Boston, MA 02110 (Attn: Sunni P.  Beville, Esq. (sbeville@brownrudnick.com)) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Curtis S.  Miller (cmiller@mnat.com)); (ii) counsel to the Stalking Horse Bidder: ~~Thacker Robinson Zinz, LPA, 2330 One Cleveland Center, 1375 E. 9th St., Cleveland, OH 44114~~<u>Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 N. King St., Wilmington, DE 19801</u> (Attn: ~~Lynn Rowe Larsen~~<u>Robert S. Brady</u>, Esq. ~~(llarsen@trzlaw~~<u>(RBrady@ycst.com) and Matt Lunn, Esq. (MLunn@ycst</u>.com)); and (iii) counsel to the Committee: _____; so as to be received by the Notice Parties not later than 5:00 p. m. (prevailing Eastern Time) on _____ (the "Bid Deadline").

    5.      Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid (including value provided by the assumption of liabilities), (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the Stalking Horse APA (including any additional conditions to closing), and (4) any other factors deemed relevant by the Sellers in their reasonable discretion (after consultation with the Committee).

6.      No Qualified Bids

If the Sellers do not receive any Qualified Bids other than the Stalking Horse APA, the Sellers will not hold an auction and the Stalking Horse Bidder will be named the Successful Bidder on the Bid Deadline.

7.      Auction Process.

If the Sellers receive one or more Qualified Bids in addition to the Stalking Horse APA, the Sellers will conduct an auction (the "Auction") of the Purchased Assets, which shall be transcribed, at _____ (prevailing Eastern Time) on _____ at the offices of Brown Rudnick LLP, One Financial Center, Boston, MA 02110, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  The Auction shall be conducted in accordance with the following procedures:

a.      Only the Sellers, the Notice Parties, the members of the Committee, the Stalking Horse Bidder, any other Qualified Bidders that have submitted Qualified Bids, and/or other party as the Sellers may determine to include in their discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person); if a party that is a creditor of the Debtors, other than those listed above, would like to attend the Auction, such party shall make a request to attend the Auction in writing (which writing may be in the form of an electronic mail) and serve such request on the Notice Parties no later than 12:00 p. m. (prevailing Eastern Time) two (2) business days prior to the date of the Auction;

b.      only the Stalking Horse Bidder and such other Qualified Bidders that have submitted Qualified Bids on or prior to the Bid Deadline will be entitled to make any subsequent bids at the Auction; provided that all such Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

c.     each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

d.     at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; _provided_ that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (a) the date of the selection of the Successful Bidder at the conclusion of the Auction, or (b) if selected as the Successful Bidder, until (1) the closing of the sale to the Successful Bidder, and (2) sixty (60) days after entry of the Sale Order.  Prior to the start of the Auction, the Sellers will provide copies of the Qualified Bid which the Sellers believe, in their reasonable discretion, is the highest or otherwise best offer (the "Starting Bid") to the Stalking Horse Bidder and all other Qualified Bidders;

e.     all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

f.     the Sellers, after consultation with their advisors and the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) provide that bids be made and received on an open basis, with all material terms of each bid to be fully disclosed to all other Qualified Bidders at the Auction and (iii) are disclosed to each Qualified Bidder at the Auction; and

g.     bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $100,000.00 above the prior bid.  After the first round of bidding and between each subsequent round of bidding, the Sellers, after consultation with counsel to the Committee, shall announce the bid (including the identity of that bidder and the value of such bid) that it believes to be the highest

11

or otherwise best offer (the "Highest Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Highest Bid.  Each Qualified Bidder shall either elect to provide a higher bid or withdraw from the Auction.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Sellers will give effect to the ~~Break Up Fee and~~ Expense Reimbursement payable to the Stalking Horse Bidder under the Stalking Horse APA as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers.  If the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a "credit" for the ~~Break Up Fee and~~ Expense Reimbursement.  To the extent a Subsequent Bid has been accepted entirely or in part because of the addition, deletion or modification of a provision or provisions in the applicable Proposed Stalking Horse APA or the Stalking Horse APA, the Sellers will identify such added, deleted or modified provision or provisions.

8.    Selection of Successful Bid

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors and the Consultation Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at or prior to the Auction by a Qualified Bidder (such bid, the "Successful Bid" and the bidder making such bid, the "Successful Bidder") and communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid.  The determination of the Successful Bid by the Sellers at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

Within two (2) business days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents

12

evidencing and containing the terms and conditions upon which the Successful Bid was made.
Within one (1) business day after adjournment of the Auction, the Sellers shall file a notice
identifying the Successful Bidder with the Bankruptcy Court.

The Sellers will sell the Purchased Assets to the Successful Bidder pursuant to the terms
of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the
Sale Hearing.

C.    THE BID PROTECTIONS

In recognition of the expenditure of time, energy, and resources, and because the
agreement to make payment thereof is necessary to preserve the value of the Sellers' estates, the
Sellers have agreed that, among other triggering events, if the Stalking Horse Bidder is not the
Successful Bidder, the Sellers will pay the Stalking Horse Bidder (i) an aggregate fee of
$200,000.00 as more fully described in the Stalking Horse APA (the "Break-Up Fee"), plus (ii)
an amount in cash equal to the Expense Reimbursement (as such term is defined in the Stalking
Horse APA, the "Expense Reimbursement") not to exceed $100,000.00, whether incurred prior
to or after the Petition Date.  The Break-Up Fee and Expense Reimbursement shall be payable as
provided for pursuant to the terms of the Stalking Horse APA and nothing herein shall be
deemed to limit or otherwise modify the terms thereof, including other circumstances pursuant to
which the Breakup-Up Fee and Expense Reimbursement may be payable.  For the avoidance of
doubt, if the Stalking Horse Bidder is entitled to the Expense Reimbursement, (i) such Expense
Reimbursement shall be limited to reasonable, actual, and documented out-of-pocket fees and
expenses, and (ii) the Stalking Horse Bidder shall submit an invoice (the "Invoice") to the
Debtors, the Committee and U.S. Trustee (together with the Stalking Horse Bidder, the "Service
Parties") evidencing such fees and expenses.  If either the Debtors, the Committee or the U.S.

Trustee objects for any reason to the payment of all or any portion of the Expense

Reimbursement, such party must file and serve an objection so as to be received by the other

Service Parties no later than ten (10) days after the submission of the Invoice.  If no party objects

to the Expense Reimbursement within such ten-day period, it shall be payable as provided for

pursuant to the terms of the Stalking Horse APA.  Any portion of the Expense Reimbursement

that is the subject of an objection will not be payable unless consensually resolved by the Parties

or determined by the Court.

The Sellers have further agreed that their obligation to pay the ~~Break-Up Fee and~~

Expense Reimbursement pursuant to the Stalking Horse APA shall survive termination of the

Stalking Horse APA and shall constitute a superpriority administrative expense claim under

section 503(b) of the Bankruptcy Code, junior in right of payment to, as applicable, outstanding

superpriority claims granted under the DIP Financing Order to the provider of DIP financing (to

the extent such financing is permitted under the Stalking Horse APA), but senior to any other

secured or unsecured creditors, and shall be payable under the terms and conditions of the

Stalking Horse APA and the Sale Procedures Order.

D.    SALE HEARING

The Sellers will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale

Hearing") to begin at _____ (prevailing Eastern Time) on _____ to approve and authorize

the sale transaction to the Successful Bidder on terms and conditions determined in accordance

with the Bidding Procedures.

E.    MISCELLANEOUS

The Auction and the Bidding Procedures are solely for the benefit of the Sellers and the

Stalking Horse Bidder, and nothing contained in the Sale Procedures Order or the Stalking Horse

APA or the Bidding Procedures shall create any rights in any other person or bidder (including without limitation rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Sale Procedures Order.

In the event the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder shall have standing to object to the sale of the Purchased Assets or any portion thereof at the Sale Hearing to the extent such objection is related to the terms of the Stalking Horse APA (including the failure to adhere to such terms) or the conduct of the Auction and interpretation of these bidding procedures.

The Sellers, after consultation with the Committee, if any, may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the goals of these procedures, namely, to maximize value for the estates; provided that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Sale Procedures Order, including permitting the submission of Qualified Bids after the close of the Auction and otherwise not conflict with these Bidding Procedures or the Sale Procedures Order. All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Sale Procedures Order.

Document comparison by Workshare Compare on Tuesday, January 02, 2018
10:27:12 AM

| Input: | |
|---|---|
| Document 1 ID | file://\\ycst\dfs\redirect\mroma\Desktop\Boston Herald - Bid Procedures Order and Bid Procedures AS FILED.docx |
| Description | Boston Herald - Bid Procedures Order and Bid Procedures AS FILED |
| Document 2 ID | file://\\ycst\dfs\redirect\mroma\Desktop\Boston Herald - Bid Procedures Order and Bid Procedures MODIFIED.docx |
| Description | Boston Herald - Bid Procedures Order and Bid Procedures MODIFIED |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 37 |
| Deletions | 44 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 81 |
|---|---|