## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| HERALD MEDIA HOLDINGS, INC., *et al.*, | Case No. 17-12881 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | **RE D.I. 13** |

### ORDER GRANTING MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE FOR AN ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL THE ASSETS, (B) APPROVING AND AUTHORIZING THE BID PROTECTIONS; (C) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE; (D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF

This matter coming before the Court on the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") (i)(a) approving and authorizing certain bidding procedures in connection with the reorganization or sale (the "Sale")

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Herald Media Holdings, Inc. (5048); Herald Media, Inc. (1468); Boston Herald, Inc. (5341) and Herald Interactive, Inc. (2359). The Debtors' headquarters are located at 70 Fargo Street, Suite 600, Boston, MA 02210.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or Asset Purchase Agreement, as appropriate.

1

of substantially all assets of the Debtors' estates and/or a reorganization of the Debtors (as attached hereto as **Exhibit 1**, the "Bidding Procedures"); (b) approving and authorizing the Break-Up Fee and Expense Reimbursements (collectively, and including the Expense Reimbursement sought in favor of Revolution Media Group, LLC, at the hearing on the Motion, the "Bid Protections"); (c) scheduling the related auction and hearing to consider approval of sale; (d) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; (e) approving the form and manner of notice thereof; and (f) granting related relief (collectively, the "Bidding Procedures Relief"); and (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided by the Stalking Horse APA (as defined below); (b) approving the assumption and assignment of certain of the Debtors' executory contracts (each, an "Executory Contract") and unexpired leases (each, an "Unexpired Lease") related thereto (any such Executory Contract or Unexpired Lease designated by the Purchaser to be assumed and assigned pursuant to the Sale (as defined below) an "Assumed Contract," and collectively, the "Assumed Contracts"); and (c) granting related relief; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances and complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and after due deliberation the Court having determined that

the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

AND IT IS FURTHER FOUND AND DETERMINED THAT:

A.      The Debtors have demonstrated good and sufficient reasons for, and the best interests of their estates, creditors, and other parties in interest will be served by, this Court granting, to the extent provided herein, the relief requested (i) in the Motion and/or (ii) at the hearing held on the Motion relating to the bidding process, including approval of (1) the Bidding Procedures, (2) the Bid Protections provided for in the asset purchase agreement, by and between the Debtors and Gatehouse Media Massachusetts I, Inc. (the "Stalking Horse Bidder"), dated as of December 7, 2017 (including all exhibits, schedules and ancillary agreements related thereto, and as may be amended, supplemented or modified pursuant to its terms, the "Stalking Horse APA"), which contemplates the Sale of the Purchased Assets (as defined in the Bidding Procedures) to the Stalking Horse Bidder, (3) the Expense Reimbursement in favor of Revolution Media Group, LLC, (4) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Contracts so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Assumed Contracts that may be assumed and assigned to the Lead Bidders, and (5) the forms of the Sale Notice and Cure Notice attached to the Motion as **Exhibit D** and **Exhibit E**, respectively.

B.      The Stalking Horse APA and its terms were negotiated by the Debtors and the Stalking Horse Bidder in good faith and at arms-length.  The Revolution APA was submitted in good faith.

C.      The Debtors have demonstrated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider

granting the other relief requested in the Motion, including approval of the Sale[3] and the transfer of the Debtors' assets to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

D.    The Bid Protections as set forth in Section 9.4.1 of the Stalking Horse APA required to be paid under the circumstances described therein to the Stalking Horse Bidder are: (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (3) reasonable and appropriate in light of the size and nature of the/ proposed Sale and comparable transactions, the commitments that have been made, the condition of the Purchased Assets, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (4) a condition to and necessary to induce the Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Stalking Horse APA.  Additionally, the Debtors, the CWA, and the Stalking Horse Bidder have agreed to the provision of an Expense Reimbursement, in an amount not to exceed $200,000, in favor of Revolution Media Group, LLC as set forth in Section 9.4.1 of the Asset Purchase Agreement submitted by Revolution Media Group, LLC at Docket No. 110 (the "Revolution Expense Reimbursement").  The Revolution Expense Reimbursement is (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by Revolution Media Group, LLC; (3) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, the condition of the Debtors' assets, and the efforts that have

---

[3] For avoidance of doubt, the term "Sale" is employed in this Sale Procedures Order with reference to a transaction contemplated to occur following the Auction of all assets of the Debtors' estates, inclusive of any transaction resulting from a Qualified Bid that takes the form of a plan of reorganization.

been and will be expended by Revolution Media Group, LLC; and (4) a condition to and necessary to induce both Revolution Media Group, LLC and the Stalking Horse Bidder (together, the "Lead Bidders") to continue to pursue the Sale and to continue to be bound by, respectively, Revolution Media Group, LLC's binding and irrevocable bid and the Stalking Horse APA (together, the "Lead Bids").

E.    Unless it is assured that the Bid Protections, including the Revolution Expense Reimbursement, will be available, the Lead Bidders are unwilling to remain obligated to consummate the Sale or otherwise be bound under their respective bids (including the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures). The Bid Protections induced the Lead Bidders to submit bids that will serve as a minimum or floor bid for the Debtors' assets on which the Debtors, their creditors and other bidders can rely, and which encourages and facilitates the Auction process. The Lead Bidders have thus provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Debtors' assets will be realized. Accordingly, the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

F.    The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Debtors' assets.

G.    The process for submitting Qualified Bids is fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and parties in interest.

H.    The Sale Notice and Cure Notice (each as defined below) are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order,

the Bidding Procedures, the Sale, the Sale Hearing, and any and all objection deadlines related thereto, including with respect to cure amounts and the assumption and assignment of Executory Contracts and Unexpired Leases, and no other or further notice is required of the foregoing.

I.    Prior to the commencement of these Chapter 11 Cases, the Debtors had, and continue to maintain during these Chapter 11 Cases, a privacy policy in place to protect personally identifiable information provided by its customers.  The privacy policy expressly permits the transfer of personally identifiable information in connection with the sale of the company or its business.  Accordingly, no consumer privacy ombudsman is required pursuant to section 363(b)(1) of the Bankruptcy Code.

J.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

K.    The entry of this Order (the "Sale Procedures Order") is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

IT IS HEREBY ORDERED THAT:

1.    The Bidding Procedures Relief is GRANTED as set forth herein.

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled on the merits.

3.    The Bidding Procedures attached hereto as **Exhibit 1** are APPROVED and shall govern all bids and bid proceedings relating to the sale of the Debtors' assets.

4.     The Debtors may proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures (subject to the terms thereof) in accordance with the following timeline:

| Proposed Sale Timeline | |
| --- | --- |
| Deadline to Serve Sale Notice and Cure Notice | January 9, 2018<br><br>(two (2) Business Days after entry of the Sale Procedures Order)[4] |
| Cure Objection Deadline and Assignment Objection Deadline | January 23, 2018 |
| Sale Objection Deadline | February 2, 2018, except with respect to any objection that pertains solely to either (a) the actions of any party during the Auction or (b) the content or value of any bid submitted after February 2, 2018, then such Sale Objection Deadline shall be February 15, 2018. |
| Bid Deadline | February 9, 2018, 5:00 p.m. (prevailing Eastern time) |
| Deadline to Notify Qualified Bidders | February 12, 2018 at 1:00 p.m. |
| Auction | February 13, 2018 at 1:00 p.m. |
| Notice of Successful Bidder | February 14, 2018 |
| Sale Reply Deadline | February 14, 2018 |
| Sale Hearing | February 16, 2018 at 10:00 a.m. |
| Sale Closing | On or before March 28, 2018 |

---

[4] As used herein, "Business Day" means any day other than Saturday, Sunday, or other day on which commercial banks in the City of Boston are authorized or required by law to remain closed.

5.      The Bid Protections, including the Revolution Expense Reimbursement up to $200,000, are APPROVED and the Debtors are required, subject to paragraph 6 below, to pay the Bid Protections when and as set forth in the Lead Bids as administrative claims of the estate, which Bid Protections shall survive termination of the Lead Bids and shall be binding and enforceable against each Debtor and its respective estates, any trustee, examiner or other representative of the Debtors' estates.  The Debtors shall comply with the Bidding Procedures and Bid Protections approved hereby and as set forth in the bids and, until the termination thereof, such other covenants and obligations set forth therein.  Any Bid Protections payable pursuant to the terms of the Lead Bids or this Sale Procedures Order shall be payable without any further order of the Bankruptcy Court.  For the avoidance of doubt, in the event of any inconsistency between this Sale Procedures Order and the Lead Bids with respect to the Bid Protections, the terms of this Sale Procedures Order shall control.

6.      For the avoidance of doubt, if the Stalking Horse Bidder is entitled to the Expense Reimbursement, (i) such Expense Reimbursement shall be limited to reasonable, actual, and documented out-of-pocket, fees and expenses not to exceed $100,000.00, and (ii) the Stalking Horse Bidder shall submit an invoice (the "Invoice") to (a) the Debtors; (b) the U.S. Trustee; and, if applicable, (c) the statutory committee appointed in these cases (the "Committee") evidencing such fees and expenses, which Invoice may be redacted for privileged information.  If Revolution Media Group, LLC is entitled to the Revolution Expense Reimbursement, (i) such Revolution Expense Reimbursement shall be limited to reasonable, actual, and documented out-of-pocket, fees and expenses not to exceed $200,000.00, and (ii) Revolution Media Group, LLC shall submit an invoice (the "Invoice") to (a) the Debtors; (b) the U.S. Trustee;  and, if applicable, (c) the Committee evidencing such fees and expenses, which Invoice may be

8

redacted for privileged information. If either the Debtors, the Committee, or the U.S. Trustee (together with the Lead Bidders, the "Service Parties") objects for any reason to the payment of all or any portion of the Expense Reimbursement or the Revolution Expense Reimbursement, such party must file and serve an objection so as to be received by the other Service Parties no later than ten (10) days after the submission of the Invoice. If no party objects to the Expense Reimbursement or Revolution Expense Reimbursement within such ten-day period, it shall be payable as provided for pursuant to the terms of the Lead Bids and this Sale Procedures Order. Any portion of the Expense Reimbursement or Revolution Expense Reimbursement that is the subject of an objection will not be payable unless consensually resolved by the parties or determined by the Court, and any portion of the Expense Reimbursement or Revolution Expense Reimbursement that is not subject to an objection shall be paid ten (10) days after submission of the invoice.

7.      On or before January 22, 2018, the Lead Bidders shall provide the Debtors' landlord, 451 D Street, LLC, with (i) a definitive indication of whether each will assume and have assigned to it the lease for the Debtors' location at 70 Fargo Street and (ii) an adequate assurance package, and 451 D Street, LLC shall have a period of not less than ten (10) days to assess the adequate assurance package and, if appropriate, object.

8.      Only holders of allowed valid secured claims are permitted to submit a credit bid at the Auction. To that end, unless expressly consented to in writing by the Debtors after consultation with (a) the Committee; (b) the Communications Workers of America, The Newspaper Guild of Greater Boston, Local 31032, New York Typographical Union, Local 14156, The Newspaper Guild International Pension Fund, The Newspaper Guild International Pension Plan, and TNG-CWA Adjustable Pension Plan (collectively, the "CWA"); (c) the

CWA/ITU Negotiated Pension Plan (the "CWA/ITU Pension"); and (d) Teamsters Local Union No. 25 and the New England Teamsters and Trucking Industry Pension Fund (collectively, the "Teamsters") (collectively, the "Consultation Parties") in advance of the Bid Deadline, no party shall be permitted or entitled to credit bid, or attempt to credit bid, any alleged obligation of the Debtors, or any affiliate or subsidiary of the Debtors, relating to (i) any alleged fees and/or penalties, (ii) alleged damages, including damages relating to or arising in connection with any prepetition activity of the Debtors, or (iii) any other claim (as that term is defined in the Bankruptcy Code) that the Debtors assert constitutes, or will constitute at some point, a contingent, unliquidated or disputed claim against the Debtors or any subsidiaries or affiliates of the Debtors. Furthermore, any credit bid must provide for (w) payment in cash at the closing of the Break-Up Fee, Expense Reimbursement and/or Revolution Expense Reimbursement to the extent the Break-Up Fee, Expense Reimbursement and/or Revolution Expense Reimbursement is required to be paid, (x) payment in cash at closing, and/or the assumption of, unpaid administrative expense claims of the Debtors incurred from the Petition Date through and including the date on which the closing of the Sale occurs, (y) payment in cash at the closing of the amount required to be paid by the Debtors, if any, on account of cure accounts that the Debtors believe must be paid to cure all defaults under the leases and contracts proposed to be assumed and assigned to the party that submitted the credit bid and (z) payment in cash at closing of all claims that are senior to the claims of the party that submitted the credit bid. Notwithstanding anything to the contrary in this Sale Procedures Order or the Bidding Procedures, the Debtors' rights to contest the propriety of any credit bid pursuant to sections 363(k) and 105 of the Bankruptcy Code are expressly reserved.

9.      The Debtors shall have the exclusive right, in consultation with their advisors and the Consultation Parties, to determine whether a bid is a Qualified Bid and shall notify Potential Bidders and the Service Parties whether any bids have been recognized as such no later than twenty-four (24) hours prior to the Auction; provided, however, that the Lead Bidders are hereby deemed Qualified Bidders, and the Lead Bids are deemed Qualified Bids for all purposes in connection with the Bidding Process, the Auction, and the Sale.  The Lead Bidders shall not be required to take any further action in order to participate in the Auction (if any) or, if either Lead Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing.

10.     Any disputes as to the selection of a Qualified Bid shall be resolved by this Court.

11.     The Auction shall be held at 1:00 p.m. (prevailing Eastern Time) on February 13, 2018, at the offices of Brown Rudnick LLP, One Financial Center, Boston, MA 02110, or such other location as shall be timely communicated to all Qualified Bidders.

12.     The Debtors shall arrange for the bidding at the Auction to be transcribed by a court reporter.  Each Qualified Bidder shall be required to confirm its bid on the record at the Auction and confirm that it has not engaged in any collusion with respect to the bidding or the sale.

13.     If the Auction is held, the Debtors shall file with the Court notice of the Successful Bid(s) and Successful Bidder(s) on or before one (1) Business Day after the Auction.

14.     The Sale Hearing shall be held on February 16, 2018 at 10:00 a.m. (prevailing Eastern Time) before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom 2.  Any objections to the Sale must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States

Bankruptcy Court for the District of Delaware and (d) be filed with the Bankruptcy Court and served in accordance with the rules of the Bankruptcy Court upon: (i) counsel to the Debtors: Brown Rudnick LLP, One Financial Center, Boston, MA 02110 (Attn: Sunni P. Beville, Esq. (sbeville@brownrudnick.com)) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Curtis S. Miller (cmiller@mnat.com)) so as to be received by the Debtors not later than February 2, 2018, except with respect to any objection that pertains solely to either (a) the actions of any party during the Auction or (b) the content or value of any bid submitted after February 2, 2018, in which case not later than February 15, 2018; (ii) counsel to the Stalking Horse Bidder: Thacker Robinson Zinz, LPA, 2330 One Cleveland Center, 1375 E. 9th St., Cleveland, OH 44114 (Attn: Lynn Rowe Larsen, Esq. (llarsen@trzlaw.com)); (iii) counsel to any statutory committee then appointed; (iv) counsel to the CWA: Saul Ewing Arnstein & Lehr LLP, 1037 Raymond Blvd., Suite 1520, Newark, NJ 07102 (attn: Sharon L. Levine, Esq. (sharon.levine@saul.com) and Dipesh Patel (dipesh.patel@saul.com); (v) counsel to the CWA/ITU Pension: Bryan Cave LLP, 1290 Avenue of the Americas, New York, NY 10104-3300 (attn: Stephanie Wickouski, Esq. (Stephanie.wickouski@bryancave.com)); (vi) counsel to the Teamsters: Feinberg, Campbell, & Zack, P.C., 177 Milk St. Suite 300, Boston, MA 02109 (attn: Michael A. Feinberg, Esq. (MAF@fczlaw.com)); (vii) counsel to Revolution Media Group, LLC: Young, Conaway, Stargatt & Taylor LLP, Rodney Square, 1000 N. King St., Wilmington, DE 19801 (attn: Robert S. Brady, Esq. (rbrady@ycst.com)); and (viii) the Office of the United States Trustee for the District of Delaware.

15.    The following forms of notice are approved: (a) Notice of Sale Procedures, Auction Date, Objection Deadline, and Sale Hearing, in the form substantially similar to that

attached to the Motion as **Exhibit D** (the "Sale Notice") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached to the Motion as **Exhibit E**.

16.    The Debtors shall, on or before January 8, 2018, serve a copy of the Sale Notice and this Sale Procedures Order by first class mail, postage prepaid on, as extant: (a) the Office of the United States Trustee for the District of Delaware; (b) the Office of the United States Attorney for the District of Delaware; (c) counsel to any statutory committee then appointed; (d) counsel to the CWA: Saul Ewing Arnstein & Lehr LLP, 1037 Raymond Blvd., Suite 1520, Newark, NJ 07102 (attn: Sharon L. Levine, Esq. (sharon.levine@saul.com) and Dipesh Patel (dipesh.patel@saul.com); (e) counsel to the CWA/ITU Pension: Bryan Cave LLP, 1290 Avenue of the Americas, New York, NY 10104-3300 (attn: Stephanie Wickouski, Esq. (Stephanie.wickouski@bryancave.com)); (f) counsel to the Teamsters: Feinberg, Campbell, & Zack, P.C., 177 Milk St. Suite 300, Boston, MA 02109 (attn: Michael A. Feinberg, Esq. (MAF@fczlaw.com)); (g) the Internal Revenue Service; (h) counsel to the Debtors' post-petition lenders; (i) counsel to the Stalking Horse Bidder; (j) all persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Assets during the previous six months; (k) all entities known by the Debtors that may have a lien, claim, encumbrance, or other interest in the Assets (for which identifying information and addresses are available to the Debtors); (l) all non-Debtor parties to the Executory Contracts and Unexpired Leases; (m) all of the Debtors' known creditors; (n) all Employees and former employees and any others receiving any benefits under any pension or Employee Benefit Plan; (o) the Pension Benefit Guaranty Corporation; (p) any governmental unit known to the Debtors to have a claim in these cases; (q) the Office of the Attorney General in each state in which the Debtors operate;

13

(r) the Office of the Delaware Secretary of State; and (s) all parties that have requested notice in these cases under Bankruptcy Rule 2002.

17.     The Debtors shall, on or before January 9, 2018, serve the Cure Notice upon each non-Debtor counterparty to each Executory Contract and Unexpired Lease and their counsel (if known) and the United States Department of Justice, Civil Division, if the non-Debtor counterparty is a department agency or instrumentality of the United States. The Cure Notice shall state the date, time and place of the Sale Hearing, whether such Executory Contract or Unexpired Lease is designated to be assumed and assigned to the Stalking Horse Bidder, as well as the date by which any objection to the assumption and assignment of such Executory Contract or Unexpired Lease must be filed and served. The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Executory Contract or Unexpired Lease in order to cure any defaults that exist under such contract or lease (the "Cure Amounts") pursuant to section 365 of the Bankruptcy Code. The Cure Notice does not constitute an admission that an Executory Contract or Unexpired Lease is in fact an executory contract or unexpired lease, and the Debtors reserve any and all rights with respect to the Executory Contracts and Unexpired Leases.

18.     If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the Cure Amounts set forth in the Cure Notice, such counterparty must file with the Court a written objection (a "Cure Amount Objection") and serve such Cure Amount Objection so as to be received by the Service Parties by no later than January 23, 2018 at 5:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline").

19.     If, at any time after the entry of this Sale Procedures Order, the Debtors or any Qualified Bidder identify additional executory contracts or unexpired leases to be assumed and

14

assigned as Assumed Contracts (whether before or after the closing of the sale), as applicable, the Debtors shall serve a supplemental Cure Notice (the "Supplemental Cure Notice") by facsimile, electronic transmission, hand delivery or overnight mail on the applicable non-debtor counterparty and its counsel (if known) and the United States Department of Justice, Civil Division, if the non-Debtor counterparty is a department agency or instrumentality of the United States, no later than fourteen (14) days before the proposed effective date of the assignment. Each Supplemental Cure Notice shall (i) state the date, time and place of the Sale Hearing, (ii) state the date by which any objection to the assumption and assignment of such Assumed Contract must be filed and served, and (iii) identify the Cure Amount.

20.     Unless the non-debtor counterparty properly files and serves an objection to the Supplemental Cure Notice (the "Supplemental Cure Amount Objection") on or before: ( fourteen (14) days after the date the Supplemental Cure Notice (the "Supplemental Cure Objection Deadline"), the Debtors shall be authorized to assume and assign the Executory Contract or Unexpired Lease, subject to the occurrence of the Closing without further notice or order of the Court.

21.     Each Cure Amount Objection and Supplemental Cure Amount Objection must set forth with specificity each and every asserted default in any Executory Contract or Unexpired Lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice or Supplemental Cure Notice, as applicable.

22.     In the event that the Debtors and the non-debtor party cannot resolve the Cure Amount Objection or Supplemental Cure Amount Objection, disputed Cure Amounts ("Disputed Cure Amounts") shall not be paid until the resolution of any such disputes by the Court or mutual

15

agreement of the Debtors, the Successful Bidder and the objecting party. Cure Amount Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely file and serve a Cure Amount Objection or Supplemental Cure Amount Objection shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice or Supplemental Cure Notice. If no timely Cure Objection or Supplemental Cure Amount Objection is filed and served with respect to an Assumed Contract, the Cure Amount identified in the Cure Notice or Supplemental Cure Notice with respect to such Assumed Contract will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Assumed Contract if the Successful Bidder ultimately decides to have the applicable Assumed Contract assumed and assigned to it. Any party failing to timely file a Cure Amount Objection or Supplemental Cure Amount Objection shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

23.    If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the assumption and assignment of such Executory Contract or Unexpired Lease with respect to the Lead Bidders (other than a Cure Amount Objection, an "Assignment Objection"), such counterparty must file and serve such Assignment Objection so as to be received by the Service Parties by no later than (the "Assignment Objection Deadline"): (i) 5:00 p.m. (prevailing Eastern Time) on January 23, 2018; or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Contract if such contract is to be assumed and assigned after the Sale Hearing); provided that, if the Successful Bidder is not

a Lead Bidder, the Debtors shall send notice of assumption to all parties to Assumed Contracts such that notice is received not later than twenty-four (24) hours prior to the Sale Hearing, and the Assignment Objection Deadline shall be one (1) day prior to the Sale Hearing or, with respect to any such notice submitted by a Successful Bidder that is not a Lead Bidder, the Assignment Objection Deadline shall be six (6) hours prior to the Sale Hearing. The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

24.    Notwithstanding any provision in this Sale Procedures Order, the Lead Bids or the Bidding Procedures, this Sale Procedures Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Assumed Contract, including those relating to the cure of any existing default or providing adequate assurance of future performance. No Assumed Contract will be deemed assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of a particular Assumed Contract or (b) the date the Sale is closed. The Successful Bidder will have no rights in and to any particular Assumed Contract until such time as the particular Assumed Contract is assumed and assigned to the Successful Bidder.

25.    Notwithstanding any other provision in this Sale Procedures Order, absent consent from Life Insurance Company of North America ("LINA"), assumption and assignment of any or all of the LINA Contracts (as defined in the LINA Objection [Docket No. 88]) will not be considered or approved at any hearing unless, at least seven (7) days prior to such hearing, LINA, through its counsel of record are provided with: (i) notice of the proposed assignee's good faith intention to assume and assign one or more of the LINA Contracts; (ii) the identity of the proposed assignee; and (iii) adequate assurance information for the proposed assignee, including

a good faith estimate as to the number of employees of the Debtors who will become employees of the assignee.

26.    Subject to the terms of the Lead Bids and the Bidding Procedures, the Debtors are authorized to take such actions as may be necessary or appropriate to implement and affect the terms and requirements of this Sale Procedures Order, including, but not limited to, expending such funds or taking such action as may be necessary or appropriate to comply with the Bidding Procedures.

27.    For the avoidance of doubt, a Qualified Bid may take any form, including but not limited to a plan of reorganization.  Furthermore, a Qualified Bid may encompass purchase or retention of any and all assets of the Debtors' estates.

28.    To the extent the provisions of this Sale Procedures Order are expressly inconsistent with the provisions of any Exhibit referenced herein, including the Bidding Procedures, or with the Motion, the provisions of this Sale Procedures Order shall control.

29.    The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Sale Procedures Order.

30.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, or otherwise, the terms and conditions of this Sale Procedures Order shall be immediately effective and enforceable.

Dated:    Jan 5    , 2018
          Wilmington, Delaware

_____
THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE