## Exhibit 1

### Bidding Procedures

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") for the proposed reorganization or sale of all or substantially all of the assets and assumption of certain liabilities of Herald Media Holdings, Inc., Herald Media, Inc., Boston Herald, Inc., and Herald Interactive, Inc. (collectively, the "Debtors" or the "Sellers"), in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), lead case number 17-12881 (LSS).

The Sellers entered into that certain asset purchase agreement, dated December 7, 2017 between the Sellers on the one hand and Gatehouse Media Massachusetts I, Inc. (the "Stalking Horse Bidder"), pursuant to which the Stalking Horse Bidder has agreed to acquire certain of the Debtors' assets (the "Purchased Assets") and has agreed to assume certain specified liabilities on the terms and conditions specified therein (together with the schedules and related documents thereto, and as may be amended, supplemented or otherwise modified, the "Stalking Horse APA").

The Stalking Horse Bidder has submitted, in the form of the Stalking Horse APA, a Qualified Bid (as defined below) consisting of (a) the assumption of the Assumed Liabilities and (b) a cash payment equal to the sum of (i) $4,500,000.00 and (ii) the Cure Amounts.[1] Revolution Media Group, LLC has also submitted at Docket No. 110 a Qualified Bid (the "Revolution APA").

The sale transactions pursuant to the Stalking Horse APA and the Revolution APA are subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion for the approval of the Bidding Procedures (the "Approval Motion") [Docket No. 13].

A.    ASSETS TO BE SOLD

The Sellers seek to complete a reorganization or sale of assets and assumption of liabilities and/or confirm a plan reorganization. Except as otherwise provided in the Stalking Horse APA or such other approved purchase agreement of the Successful Bidder (as defined below) or plan of reorganization, to the extent that assets of the Debtors become assets of a Successful Bidder or reorganized Debtor following closing of a Sale or confirmation of a plan as applicable, all of the Sellers' right, title and interest in and to each asset to be acquired shall be conveyed free and clear of all liens, claims, interests, charges, restrictions and encumbrances of any kind or nature thereon and there against (collectively, the "Liens").

B.    THE BID PROCEDURES

To ensure that the Sellers receive the maximum value for their assets, the Stalking Horse APA and the Revolution APA (together, the "Lead Bids") are subject to higher or otherwise better offers, and, as such, the Lead Bids will serve as the "stalking-horse" bids for the Debtors'

---

[1]   Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

assets. No later than prior to the commencement of the Auction, the Debtors shall identify the highest and best bid then received as set forth in Section 6.d. herein.

1.      Provisions Governing Qualifications of Bidders

In order to participate in the bidding process, prior to the Bid Deadline (defined below), each person other than the Stalking Horse Bidder and Revolution Media Group, LLC (together, the "Lead Bidders") who wishes to participate in the bidding process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined below):

   a.      a written disclosure of the identity of each entity including all affiliates, equity sources or other parties that will be or is associated with bidding for the Debtors' assets or otherwise participating in connection with such bid and the complete terms of any such participation; and

   b.      an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers, in substantially the same form as signed by the Stalking Horse Bidder and which shall inure to the benefit of any purchaser of the Debtors' assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions. Notwithstanding anything herein to the contrary, Communications Workers of America, The Newspaper Guild of Greater Boston, Local 31032, New York Typographical Union, Local 14156, The Newspaper Guild International Pension Fund, The Newspaper Guild International Pension Plan, and TNG-CWA Adjustable Pension Plan (collectively, the "CWA"), the CWA/ITU Negotiated Pension Plan (the "CWA/ITU Pension"), Teamsters Local Union No. 25 and the New England Teamsters and Trucking Industry Pension Fund (collectively, the "Teamsters"); in their capacity as Consultation Parties (as defined below), may share and discuss confidential information with any Potential Bidder that signed a confidentiality agreement.

A Potential Bidder that delivers the documents and information described above and that the Sellers determine in their reasonable business judgment, after consultation with their advisors, the CWA, the CWA/ITU Pension, the Teamsters, and, if applicable, the statutory committee appointed in these cases (the "Committee" and together with the CWA, the CWA/ITU Pension, and the Teamsters, the "Consultation Parties" and each a "Consultation Party"), is likely (based on availability of committed capital, experience and other considerations) to submit a bona fide offer and be able to consummate the sale or reorganization including without limitation obtaining all required regulatory or government agency approvals, will be deemed a "Qualified Bidder." The Sellers will limit access to due diligence to those parties they believe, in the exercise of their reasonable judgment, are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers all of the materials required above (and in any event no later than one (1) business day thereafter), the Sellers will determine, after consultation with the Consultation Parties, and will notify the Potential Bidder, the Stalking Horse Bidder and the Notice Parties if such Potential Bidder is a Qualified Bidder.

2.    Due Diligence

Until the day of the Auction, or the Bid Deadline if a Potential Bidder shall not have submitted a Qualified Bid by the Bid Deadline, the Debtors will afford any Potential Bidder that the Debtors determine in their discretion after consultation with the Consultation Parties to be reasonable and appropriate under the circumstances. All due diligence requests shall be directed to counsel to the Debtors: Brown Rudnick LLP, One Financial Center, Boston, MA 02110 (Attn: Sunni P. Beville, Esq. (sbeville@brownrudnick.com)).    The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

The Sellers will afford any Qualified Bidder with (a) an electronic copy of the Stalking Horse APA, (b) access information for a confidential electronic data room concerning such assets of the Debtors as the Debtors may determine in consultation with the Consultation Parties (the "Data Room"), and (c) such due diligence access or additional information as the Sellers, in consultation with their advisors, and the Consultation Parties, deem appropriate, in their reasonable discretion, subject to contractual obligations to limit access to certain proprietary information; provided, however, the Sellers will, in their reasonable discretion, make reasonable commercial efforts to provide Qualified Bidders with the same information provided to the Stalking Horse Bidder. The Sellers must promptly advise the Stalking Horse Bidder and the Consultation Parties in the event any other Qualified Bidder receives diligence the Stalking Horse Bidder has not previously received and shall promptly provide the Stalking Horse Bidder with access to such diligence materials.

The due diligence period shall end on the Bid Deadline, and the Sellers shall not furnish any due diligence information to any Qualified Bidder (other than the Successful Bidder) after the Bid Deadline. For the avoidance of doubt, neither the Sellers nor any of their respective representatives shall be obligated to furnish any due diligence information to any person other than a Qualified Bidder.

3.    Provisions Governing Qualified Bids

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):[2]

        a.    it fully discloses the identity of the Qualified Bidder;

        b.    unless taking the form of a plan of reorganization, it states that the applicable Qualified Bidder offers to purchase certain of the Debtors' assets, (as identified therein, the "Purchased Assets") upon terms and

---

[2] To the extent any of the following requirements is inconsistent with the submission of a Qualified Bid in the form of a plan of reorganization, and/or the confirmation of such plan or any related procedures, these provisions will be construed so as to permit submission and facilitate procedures required to consummate the transaction contemplated by any such bid.

conditions that the Sellers reasonably determine, after consultation with the Consultation Parties, are at least as favorable to the Sellers as those set forth in the Stalking Horse APA, and it provides a description of any anticipated regulatory or governmental approvals necessary to consummate the bid;

c.  it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable until the earlier of (a) the closing of the sale to the Successful Bidder or confirmation of the plan of reorganization, as applicable; and (b) sixty (60) days after entry of the Sale Order.  Such writing shall guaranty performance of the Qualified Bidder by its parent entities, if any, or provide such other guaranty of performance acceptable to Sellers in their reasonable discretion;

d.  confirmation that all necessary internal and shareholder approvals have been obtained prior to the bid;

e.  if taking the form of an asset purchase agreement,[3] it includes a duly authorized and executed copy of an asset purchase agreement, including as applicable the purchase price for the Purchased Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse APA (together with exhibits, schedules, and marked copies, the "Proposed Stalking Horse APA") and the proposed form of sale approval order to approve the sale by the Bankruptcy Court, together with a copy marked to show amendments and modifications to the proposed form of sale approval order attached to the Approval Motion; provided however, that such Proposed Stalking Horse APA shall not include any financing or diligence conditions;

f.  it includes written evidence of sufficient cash on hand to fund the purchase price (or, if taking the form of a plan of reorganization, evidence of cash sufficient to effectuate the plan) or sources of immediately available funds that are not conditioned on third party approvals or commitments, that will allow the Sellers to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Proposed Stalking Horse APA; such written evidence shall include the most current audited and the most current unaudited financial statements, or such other financial information as may be acceptable to the Sellers in their reasonable discretion after consultation with the Consultation Parties (collectively, the "Financials") of the Qualified Bidder, or, if the Qualified Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Qualified

---

[3]  For the avoidance of a doubt, a Qualified Bid need not take the form of an Asset Purchase Agreement.

Bidder's equity holder(s) or other financial backer(s) that are guaranteeing the Qualified Bidder's performance;

g.   it provides for a purchase price that exceeds the aggregate consideration to be paid to or for the benefit of the Sellers' estates set forth in either of the Lead Bids by at least $600,000.00, which represents the sum of (A) the amount of the Break-Up Fee (as defined below) of $200,000.00, plus (B) the maximum amount of the Expense Reimbursement (as defined below) of $100,000.00, plus (C) the maximum amount of the Revolution Expense Reimbursement (as defined below) of $200,000.00, plus (D) $100,000.00; and otherwise has a value to the Sellers, in the Sellers' exercise of their reasonable business judgment, after consultation with their advisors, that is greater or otherwise better than the value offered under the Lead Bids including impact of the liabilities assumed in the Lead Bids and pursuant to the Sale Procedures Order;

h.   it expressly states whether the Qualified Bidder intends to assume sponsorship of all or any part of, or any of the potential liabilities associated with, (1) the Boston Herald Pension and Retirement Plan ("Retirement Plan"), (2) the Boston Herald Inc. Guild Commercial Retirement Plan (the "Guild Plan"), (3) the CWA/ITU Pension, and/or (4) the New England Teamsters & Trucking Industry Pension Fund (collectively, the "Pension Plans");

i.   it is accompanied by a cash deposit in the amount of 10% of the cash purchase price of the bid (the "Deposit");

j.   it does not entitle the Qualified Bidder to any break-up fee, termination fee or similar type of payment or reimbursement and confirms that, by submitting a bid, the Qualified Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid;

k.   it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume. With respect to the Debtors' lease with 451 D Street, LLC, such election to assume or reject will be absolute and final, subject only to the right of a Qualified Bidder to not assume the Debtor's lease with 451 D Street, LLC, if the Qualified Bidder subsequently determines that it is (i) unwilling to agree to 451 D Street, LLC's demands for additional adequate assurance of future performance beyond the adequate assurance provided with its bid, or (ii) unable or unwilling to comply with (a) rulings from the Court as to adequate assurance of future performance for the Debtor's lease with 451 D Street, LLC or (b) cure amounts ordered by the Court;

l.   it includes an acknowledgement and representation that the Qualified Bidder: (A) has had an opportunity to conduct any and all required due

diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Proposed Stalking Horse APA; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

m.   It includes evidence, in form and substance reasonably satisfactory to the Sellers, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposed Stalking Horse APA and/or all other contemplated transactions or plans of reorganization;

n.   It contains a detailed description of how the Qualified Bidder intends to treat current employees of the Sellers;

o.   it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned. Within one business day after the Debtors have deemed a bid as Qualified, if such bid seeks to assume 451 D Street, LLC's lease with the Debtors, the Debtors shall provide to 451 D Street LLC the Qualified Bidder's adequate assurance information;

p.   it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court;

q.   it contains such other information reasonably requested by the Sellers;

r.   it complies with all requirements of the Sale Procedures Order; and

s.   it is received, along with the Deposit, on or prior to the Bid Deadline.

Notwithstanding anything in these Bidding Procedures to the contrary, the Lead Bidders are deemed to be Qualified Bidders, the Stalking Horse APA and Revolution APA (defined below) are deemed to constitute Qualified Bids for all purposes in connection with the Bidding Procedures, the Auction, and the Sale, and the Lead Bidders shall not be required to take any further action in order to participate in the Auction or, if the either Lead Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing (as defined below).

The Sellers shall notify the Lead Bidders, all Qualified Bidders, and the Notice Parties in writing as to whether or not any bids constitute Qualified Bids (and, with respect to each

Qualified Bidder that submitted a bid other than the Lead Bidders, whether such Qualified Bidder's bid constitutes a Qualified Bid) promptly after, and in any event on the same day as, the notification to any Qualified Bidder that their bid constitutes a Qualified Bid; provided, however, that such notification shall not be given later than twenty-four (24) hours prior to the Auction.

4.    Bid Deadline

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) counsel to the Sellers: Brown Rudnick LLP, One Financial Center, Boston, MA 02110 (Attn: Sunni P. Beville, Esq. (sbeville@brownrudnick.com)) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Curtis S. Miller (cmiller@mnat.com)); (ii) counsel to the Stalking Horse Bidder: Thacker Robinson Zinz, LPA, 2330 One Cleveland Center, 1375 E. 9th St., Cleveland, OH 44114 (Attn: Lynn Rowe Larsen, Esq. (llarsen@trzlaw.com)); (iii) counsel to any statutory committee then appointed; (iv) counsel to the CWA: Saul Ewing Arnstein & Lehr LLP, 1037 Raymond Blvd., Suite 1520, Newark, NJ 07102 (attn: Sharon L. Levine, Esq. (sharon.levine@saul.com) and Dipesh Patel (dipesh.patel@saul.com)); (v) counsel to the CWA/ITU Pension: Bryan Cave LLP, 1290 Avenue of the Americas, New York, NY 10104-3300 (attn: Stephanie Wickouski, Esq. (Stephanie.wickouski@bryancave.com)); (vi) counsel to Teamsters Local Union No. 25 and the New England Teamsters and Trucking Industry Pension Fund: Feinberg, Campbell, & Zack, P.C., 177 Milk St. Suite 300, Boston, MA 02109 (attn: Michael A. Feinberg, Esq. (MAF@fczlaw.com)); and (vii) counsel to Revolution Media Group, LLC: Young, Conaway, Stargatt & Taylor LLP, Rodney Square, 1000 N. King St., Wilmington, DE 19801 (attn: Robert S. Brady, Esq. (rbrady@ycst.com)); so as to be received by the Notice Parties not later than 5:00 p.m. (prevailing Eastern Time) on February 9, 2018 (the "Bid Deadline"). The Debtors shall promptly provide copies of all Qualified Bids that propose to assume any liabilities associated with the Pension Plans to the Pension Benefit Guaranty Corporation, 1200 K St. NW, Washington, DC 20005 (Attn: Courtney L. Morgan (morgan.courtney@pbgc.gov)).

5.    Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid (including value provided by the assumption of liabilities and any benefit to the Debtors' bankruptcy estates from any assumption of liabilities under the Pension Plans or the assumption of the sponsorship of all, any, or a portion of the Pension Plans), (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the Stalking Horse APA (including any additional conditions to closing), and (4) any other factors deemed relevant by the Sellers in their reasonable discretion (after consultation with the Committee).

6.    Auction Process.

The Sellers will conduct an auction (the "Auction") of the Purchased Assets, which shall be transcribed, at 1:00 p.m. (prevailing Eastern Time) on February 13, 2018 at the offices of Brown Rudnick LLP, One Financial Center, Boston, MA 02110, or such other location as shall

be timely communicated to all entities entitled to attend the Auction. The Auction shall be conducted in accordance with the following procedures:

a.  Only the Sellers, the Notice Parties, the members of the Committee, the Lead Bidders, any other Qualified Bidders that have submitted Qualified Bids, and/or other party as the Sellers may determine to include in their discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person); if a party that is a creditor of the Debtors, other than those listed above, would like to attend the Auction, such party shall make a request to attend the Auction in writing (which writing may be in the form of an electronic mail) and serve such request on the Notice Parties no later than 12:00 p.m. (prevailing Eastern Time) two (2) business days prior to the date of the Auction;

b.  only the Lead Bidders and such other Qualified Bidders that have submitted Qualified Bids on or prior to the Bid Deadline will be entitled to make any subsequent bids at the Auction; provided that all such Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

c.  each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

d.  at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (a) the date of the selection of the Successful Bidder at the conclusion of the Auction, or (b) if selected as the Successful Bidder, until (1) the closing of the sale to the Successful Bidder, and (2) sixty (60) days after entry of the Sale Order. Prior to the start of the Auction, the Sellers will provide copies of the Qualified Bid which the Sellers believe, in their reasonable discretion, is the highest or otherwise best offer (the "Starting Bid") to the Stalking Horse Bidder and all other Qualified Bidders;

e.  all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

f.  the Sellers, after consultation with their advisors and the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these

Case 17-12881-LSS    Doc 146-1    Filed 01/05/18    Page 10 of 12

Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) provide that bids be made and received on an open basis, with all material terms of each bid to be fully disclosed to all other Qualified Bidders at the Auction and (iii) are disclosed to each Qualified Bidder at the Auction; and

g. bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $100,000.00 above the prior bid. After the first round of bidding and between each subsequent round of bidding, the Sellers, after consultation with counsel to the Consultation Parties, shall announce the bid (including the identity of that bidder and the value of such bid) that it believes to be the highest or otherwise best offer (the "Highest Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Highest Bid. Each Qualified Bidder shall either elect to provide a higher bid or withdraw from the Auction. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Lead Bidders), the Sellers will give effect to the Break-Up Fee, Expense Reimbursement, and Revolution Expense Reimbursement payable to the respective Lead Bidders as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers. If the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a "credit" for the Break-Up Fee and Expense Reimbursement; likewise, if Revolution Media Group, LLC bids at the Auction, it will be entitled to a "credit" for the Revolution Expense Reimbursement. To the extent a Subsequent Bid has been accepted entirely or in part because of the addition, deletion or modification of a provision or provisions in the applicable Proposed Stalking Horse APA or the Stalking Horse APA, the Sellers will identify such added, deleted or modified provision or provisions.

7. Selection of Successful Bid

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors and the Consultation Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders (including the Lead Bidders) submitted at or prior to the Auction by a Qualified Bidder (such bid, the "Successful Bid" and the bidder making such bid, the "Successful Bidder") and communicate to the Lead Bidders and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Sellers at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

Within two (2) business days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents

evidencing and containing the terms and conditions upon which the Successful Bid was made. Within one (1) business day after adjournment of the Auction, the Sellers shall file a notice identifying the Successful Bidder with the Bankruptcy Court.

The Sellers will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.

## C.    THE BID PROTECTIONS

In recognition of the expenditure of time, energy, and resources, and because the agreement to make payment thereof is necessary to preserve the value of the Sellers' estates, the Sellers have agreed that if the Stalking Horse Bidder is not the Successful Bidder, the Sellers will pay the Stalking Horse Bidder (i) an aggregate fee of $200,000.00 as more fully described in the Stalking Horse APA (the "Break-Up Fee"), plus (ii) an amount in cash equal to the Expense Reimbursement (as such term is defined in the Stalking Horse APA, the "Expense Reimbursement") not to exceed $100,000.00, whether incurred prior to or after the Petition Date.

Additionally, in recognition of the expenditure of time, energy, and resources, and because the agreement to make payment thereof is necessary to preserve the value of the Sellers' estates, the Sellers and the Stalking Horse Bidder have agreed that if Revolution Media Group, LLC is not the Successful Bidder, the Sellers will pay Revolution Media Group, LLC an amount in cash equal to the Expense Reimbursement (as such term is defined in the Revolution Media Group, LLC's binding and irrevocable bid submitted at Docket No. 110, the "Revolution Expense Reimbursement;" the bid itself, the "Revolution APA") not to exceed $200,000.00, whether incurred prior to or after the Petition Date.

The Break-Up Fee, Expense Reimbursement and Revolution Expense Reimbursement shall be payable as provided for pursuant to the terms of the Lead Bids and nothing herein shall be deemed to limit or otherwise modify the terms thereof. For the avoidance of doubt, if either of the Lead Bidders are entitled to their respective Expense Reimbursements, (i) such Expense Reimbursement shall be limited to reasonable, actual, and documented out-of-pocket fees and expenses, and (ii) the respective Lead Bidder shall submit an invoice (the "Invoice") to the Debtors, the Committee and the U.S. Trustee (together with the Lead Bidders, the "Service Parties") evidencing such fees and expenses. If either the Debtors, the Committee or the U.S. Trustee objects for any reason to the payment of all or any portion of the Expense Reimbursement or Revolution Expense Reimbursement, such party must file and serve an objection so as to be received by the other Service Parties no later than ten (10) days after the submission of the Invoice. If no party objects to the Expense Reimbursement or Revolution Expense Reimbursement within such ten-day period, it shall be payable as provided for pursuant to the terms of the Sale Procedures Order. Any portion of the Expense Reimbursement or Revolution Expense Reimbursement that is the subject of an objection will not be payable unless consensually resolved by the Parties or determined by the Court.

The Sellers have further agreed that their obligation to pay the Break-Up Fee and Expense Reimbursement pursuant to the Stalking Horse APA shall survive termination of the Stalking Horse APA and shall constitute an administrative expense claim under section 503(b) of

the Bankruptcy Code, junior in right of payment to, as applicable, outstanding superpriority claims granted under the DIP Financing Order to the provider of DIP financing (to the extent such financing is permitted under the Stalking Horse APA), but senior to any other secured or unsecured creditors, and shall be payable under the terms and conditions of the Stalking Horse APA and the Sale Procedures Order.

### D.   SALE HEARING

The Sellers will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin at 10:00 a.m. (prevailing Eastern Time) on February 16, 2018 to approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bidding Procedures.

### E.   MISCELLANEOUS

The Auction and the Bidding Procedures are solely for the benefit of the Sellers and the Stalking Horse Bidder and Revolution Media Group, LLC, and nothing contained in the Sale Procedures Order or the Lead Bids or the Bidding Procedures shall create any rights in any other person or bidder (including without limitation rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Sale Procedures Order.

In the event either Lead Bidder is not the Successful Bidder, such Lead Bidder shall have standing to object to the sale of the Debtors' assets or any portion thereof at the Sale Hearing to the extent such objection is related to the terms of the Lead Bids (including the failure to adhere to such terms) or the conduct of the Auction and interpretation of these bidding procedures.

The Sellers, after consultation with the Consultation Parties, if any, may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the goals of these procedures, namely, to maximize value for the estates; provided that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Sale Procedures Order, including permitting the submission of Qualified Bids after the close of the Auction and otherwise not conflict with these Bidding Procedures or the Sale Procedures Order. All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Sale Procedures Order.

62933077 v10