**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: | Chapter 11 |
| HERALD MEDIA HOLDINGS, INC., *et al.*, | Case No. 17-12881 (LSS) |
| Debtors.[1] | (Jointly Administered) |

### OBJECTION OF THE BOSTON GLOBE TO DEBTORS' CURE AMOUNT

The Boston Globe (the "**Globe**"), by and through its undersigned counsel, hereby objects to the Debtors' proposed cure amounts with respect to (i) the Inserting Services Agreement (the "**Inserting Services Agreement**") between the Globe and Boston Herald, Inc. (the "**Herald**"), listed on page 9 of 12 of Exhibit 1 to the *Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors of Assumption, Assignment, and Sale* filed on January 9, 2018 [D.I. 161] ("**Notice To Counterparties**"); (ii) the Printing Agreement between the Globe and the Herald listed on page 9 of 12 of Exhibit 1 to the Notice to Counterparties (the "**Printing Agreement**," and, together with the Inserting Services Agreement, the "**Cure Cost Agreements**"). In support of this Objection, the Globe respectfully states as follows:

1.  The Globe and the Herald are parties to the Inserting Services Agreement dated May 31, 2013, pursuant to which the Globe agreed to, among other things, add advertising

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Herald Media Holdings, Inc. (5048); Herald Media, Inc. (1468); Boston Herald, Inc. (5341) and Herald Interactive, Inc. (2359). The Debtors' headquarters are located at 70 Fargo Street, Suite 600, Boston, MA 02210.

inserts to the Herald's newspapers.[2] In return, the Herald agreed to deliver such advertising inserts to the Globe and pay the Globe for such inserting services.[3]

2. The Globe and the Herald are parties to the Printing Agreement dated January 27, 2012, which has been amended from time to time, pursuant to which the Globe agreed to, among other things, print, prepare, and package the Herald's newspapers. In return, the Herald agreed to pay the Globe for such printing services.

3. On December 8, 2017 (the "**Petition Date**"), the above-captioned Debtors, including the Herald, each commenced a case under chapter 11 of the Bankruptcy Code, which cases are now being jointly administered. The total outstanding and unpaid amount due to the Globe under the Cure Cost Agreements as of the Petition Date was $647,899. Specifically, as of the Petition Date, (i) the total outstanding and unpaid amount due to the Globe under the Inserting Services Agreement was $20,301, and (ii) the total outstanding and unpaid amount due to the Globe under the Printing Agreement was $627,598. The Herald is in default under each of the Cure Cost Agreements. Specifically, the Herald is in default under § 3 of the Inserting Services Agreement and § 4 of the Printing Agreement.

---

[2] The original non-debtor counterparties to the Agreements were the New York Times and certain of its affiliates (collectively, the "**New York Times**"). Upon the acquisition of the Globe and its related assets and entities from the New York Times, the Agreements were assigned to the Globe and certain of its affiliates.

[3] The Agreements contain proprietary and confidential information. The Globe will provide a copy of the Agreements to the Debtors and their counsel upon written request. To the extent a copy is required to be filed with this Court or otherwise provided to any other party in interest in these proceedings, the Globe reserves all rights to file the Agreements under seal and to seek to protect such information as confidential, pursuant to 11 U.S.C. § 107 and otherwise applicable law.

4. Following the Petition Date, the Debtors continued to benefit from the Cure Cost Agreements, and the amounts which were outstanding prior to the Petition Date remain unpaid.[4]

5. On the Petition Date, the Herald filed a *Voluntary Petition for Non-Individuals Filing for Bankruptcy* [D.I. 1], which included a Consolidated List of Thirty Creditors Holding Largest Unsecured Claims (the "**Top 30 List**"). The Debtors listed the Globe on the Top 30 List as having an unliquidated claim for "Trade Services" with an estimated amount of $600,000. On the Petition Date, the Herald also filed a *Declaration of Jeffery W. Magram in Support of First Day Pleadings* (the "**First Day Declaration**") [D.I. 3] which stated that the amounts due from the Debtors to their printing, delivery, and insertion service providers—the "bulk" of which "stem from … agreements with the Boston Globe"—was "not more than $800,000." First Day Declaration ¶ 103-104.

6. Also on the Petition Date, the Debtors filed a motion seeking authority to enter into an asset sale agreement, approve bidding procedures, sell certain assets free and clear of all liens, and assume and assign certain executory contracts ("**Sale Motion**") [D.I. 13]. The Sale Motion proposed that Gatehouse Media Massachusetts I, Inc. ("**Gatehouse**") would be the "Stalking Horse Bidder" for substantially all of the Debtors' assets, pursuant to an asset purchase agreement attached to the Sale Motion (the "**Stalking Horse APA**"). The Stalking Horse APA contemplates that the Debtors will reject all of the Globe Agreements (including the Cure Cost Agreements), which would accordingly be excluded from Gatehouse's purchase. *See* Stalking

---

[4] The Globe and certain of its affiliates (each, a "**Globe Entity**" and collectively, the "**Globe Entities**"), including Algonquin Acquisition Company, also are party to certain other agreements (collectively, the "**Globe Agreements**") that the Debtors propose to assume and assign to Revolution in accordance with the terms of Sale Motion.

Horse APA §§ 2.1.10 and 2.2; Sale Motion at 9 (specifying the "Globe Agreements" as "Excluded Assets").

7. On January 2, 2018, Revolution Media Group LLC ("**Revolution**") filed an objection to the Sale Motion (the "**Revolution Objection**") [D.I. 110] stating that it had submitted a binding, non-contingent bid for the purchase of substantially all of the Debtors' assets on the terms set forth in an asset purchase agreement attached to the Revolution Objection (the "**Revolution APA**"). The Revolution APA contemplates that the Debtors will assume the Cure Cost Agreements and assign them to Revolution as part of the purchase. *See* Revolution APA §§ 2.1.10 and 2.2.

8. On January 5, 2018, the Court granted the Sale Motion in part and entered an order approving certain bidding procedures ("**Bidding Procedures Order**") [D.I. 146]. Pursuant to the Bidding Procedures Order, on January 9, 2018, the Debtors filed the Notice To Counterparties, notifying the Globe Entities that the Debtors may assume and assign the Cure Cost Agreements as part of the sale contemplated by the Sale Motion. Exhibit 1 to the Notice To Counterparties lists proposed cure amounts of $0.00 with respect to each of the Cure Cost Agreements.

9. The Globe hereby objects to the cure amounts and, to the extent Debtors seek to assume the Cure Cost Agreements, the Globe demands payment of $647,899.[5] Section 365(b)(1)(A) of the Bankruptcy Code requires the Debtors to cure all monetary defaults under an executory contract before they can assume such contract. 11 U.S.C. § 365(b)(1)(A). The Debtors are in default under the Cure Cost Agreements, and because the proposed cure amount

---

[5] The Globe reserves all rights with respect to post-petition administrative claims owed to the Globe.

of $0.00 is not sufficient to "cure[] ... such default[,]" the Debtors may not assume the Cure Cost Agreements.  11 U.S.C. § 365(b)(1)(A).

10. With respect to any assignee who is not Gatehouse or Revolution, the Globe hereby reserves any and all rights to object to the assumption and assignment of the Cure Cost Agreements on the basis of not having received adequate assurance of future performance that meets the requirements of Section 365(b)(1)(C) of the Bankruptcy Code.  Moreover, the Globe or each Globe Entity reserves any and all rights that they may have in the event that the Sale Motion is not approved, or if the Sale Motion is modified to exclude any of the Globe Agreements as contracts that are designated for assumption and assignment to Revolution.

| | |
|---|---|
| Dated:  January 23, 2018<br>Wilmington, Delaware | The Law Office of Edward J. Kosmowski, LLC<br><br>*/s/ Edward J. Kosmowski*<br>Edward J. Kosmowski (DE Bar No. 3849)<br>2 Mill Road, Suite 202<br>Wilmington, DE 19806<br>Telephone: (302) 351-9010<br><br>-and-<br><br>SHEARMAN & STERLING LLP<br><br>Fredric Sosnick (pro hac vice admission pending)<br>Michael Guippone (pro hac vice admission pending)<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 848-4000<br>Facsimile: (646) 848-8174<br><br>*Counsel to the Globe Entities* |